## BADGETT AND WIFE VS. KEATING AND WIFE.

Miles Killian, and Elizabeth, his wife, for a nominal consideration expressed in the deed, conveyed certain land belonging to the wife, to Badgett, upon the following trusts: "That the said Killian and wife, for and during their natural lives, respectively, without impeachment of or for any manner of waste, should have, hold and enjoy said tract of land, * * and receive and enjoy the rents and profits thereof; and, upon trust also, that the said Badgett, upon the written request of said K. and wife, or the survivor of either of them, may, at any time, and shall, upon such request, mortgage or sell the said tracts of land, or any part thereof; and the said K. and wife, or the survivor, to receive the entire consideration received upon such mortgage or sale: And said trustee, or any one that may be appointed, shall have full power to make valid title in such cases, and if no such disposition shall be made thereof, then, at the expiration of said life estate, the remainder shall descend to the heir of said Elizabeth Killian." The wife had no children by K., and

*Badgett and Wife vs. Keating and Wife.

died, leaving one daughter, the issue of a former marriage; K. married again, and, for a nominal consideration, conveyed the trust estate to one Moore who, on the same day, for the like consideration, conveyed it to K.'s second wife; the trustee died without having executed his trust by mortgage or sale. Held:

*First*—That Killian was merely a nominal party to the deed of trust, and not properly a *cestui que trust*, because the legal estate did not pass from him to Badgett, the trustee, but from the wife, in whom the equitable estate remained.

*Second*—K. acquired a life interest in the rents and profits of the land, and, upon sale or mortgage, in the money realized therefrom.

*Third*—There being nothing for the trustee to do under the provisions of the deed, but to carry out its directions according to the letter, it created an executed trust: and it seems rather to have reserved the rents and profits to the grantors, than to have entrusted the collection of them to the trustee.

*Fourth*—The effect of the deed was to separate the legal from the equitable estate; to vest the first in the trustee; the second in the *cestui que trust*, Mrs. Killian.

*Fifth*—Declarations of trust are construed in the same manner as common law conveyances, and the trust estate is governed by the same rules; the *cestui que trust* is seized absolutely of the freehold, in contemplation of a court of equity.

*Sixth*—A trust once created attaches to the legal estate, and cannot be detached from it and extinguished, except by the union of the two estates in one person, when the equitable, will merge into the legal estate. This rule excludes the idea of the legal and equitable estate uniting in K., he never having been seized of a legal estate, could not, as *cestui que trust*, hold an equitable estate. The only estate held by him at the time of the execution of the deed to Moore, was the life interest acquired under the deed of trust.

*Seventh*—Badgett could not, by denying the validity of K.'s deed, renounce the trust. A trust, once accepted, cannot be renounced by the trustee, or his heirs, upon whom it is cast at his death; nor can he discharge himself of it without the consent of the *cestui que trust*, or the court.

*Eighth*—The power to sell was to be invoked by a request in writing. It must be a request to mortgage or sell, not to ratify a sale made by another. As regarded price, and time, and manner of sale, a discretion was vested in the trustee.

*Ninth*—Upon proper application, the trustee might have been required to mortgage or sell; but this not having been done during his life, the estate in remainder passed to and vested in the heirs of Elizabeth Killian.

*Tenth*—The deed from Killian to Moore was inoperative, and, upon his death, Mrs. K. having died previously, the purposes of the trust were completed; nothing remained to be done, and the legal estate passed to, and united with the equitable estate, in the heir of Mrs. K., to whom the estate was limited in remainder.

*Vol. XXXI.—26.*

Badgett and Wife vs. Keating and Wife.°

APPEAL from *Pulaski* Chancery Court.

Hon. JOHN R. EAKIN, Chancellor.

*Wassell & Moore,* and *T. D. W. Yonley,* for appellants.

*Rose, contra.*

WALKER, J.:

Badgett and wife brought this action in ejectment for the possession of certain lands therein described, to which Keating and wife interpose an equitable defense, asserting title in the wife to the same lands, and, upon their motion, the cause was transferred to the equity court.

The answer was made a cross bill; plaintiffs filed an amended complaint, and an answer to the cross bill. The cause was heard before the chancellor upon the pleadings, exhibits and an agreed state of facts, upon consideration of which, the chancellor decreed in favor of the defendants, from which decree the plaintiffs appealed to this court.

The facts upon which the respective parties claim title to the land in controversy are, that before the 28th of May, 1861, Elizabeth McLain was the legal owner of the lands in controversy, and continued to own them until the time of her marriage with Miles Killian; that after such marriage, on the 28th of May, 1861, Killian, and his wife Elizabeth, for the consideration of one dollar, and for other good considerations, conveyed said lands by deed to William B. Badgett in trust, that the said Killian and wife, for and during their natural lives, respectively, without impeachment of, or for any manner of waste, should have, hold and enjoy said tract of land, with the hereditaments and appurtenances, and receive and enjoy the rents and profits thereof; and upon trust also that the said Badgett, upon the written request of said Killian and wife, or the survivor of either of them, may, at any time, and shall, upon such request, mortgage or sell the said tracts of land, or any part thereof, and the

said Killian and wife, or the survivor, to receive the entire consideration received upon such mortgage or sale ; and said trustee, or any one that may be appointed, shall have full power to make valid title in such cases, and if no such disposition shall be made thereof, then, at the expiration of said life estate, the remainder shall descend to the heir of said Elizabeth Killian.

The plaintiff,· Lucetta Badgett, was the only heir of Elizabeth Killian, by a former marriage. So far as appears, Elizabeth had no children by her marriage with Killian, and died in the year 1862.

On the 26th of February, 1866, Killian married the defendant, Ruth A. Keating.  On the 28th of February, 1868, for the consideration of one dollar, he conveyed the lands in controversy, by quit claim deed, to James S. Moore, who, on the same day, conveyed said lands by deed, for a like consideration, to Ruth A. Keating, then the wife of Miles Killian. In less than a month after this Killian died, and, on the 5th of May, 1869, defendant Keating and Ruth, the widow of Killian, were married. William B. Badgett, the trustee, after the death of Killian also died without having executed his trust by either mortgage or sale. The plaintiff, Noah H. Badgett, married Lucetta, the daughter and heir at law of Elizabeth Killian.

It is under this title Lucetta and her husband assert title to the lands in controversy.

The title set up by defendants is by deed from Miles Killian, executed after the death of his wife Elizabeth.

The title held by Killian, and his right to convey, is a question of paramount importance in determining the issue involved. If the title to the land was in Killian, then the heir, Lucetta Badgett, acquired no estate in the remainder, after Killian's death. A decision of the case turns upon this question.

That the lands belonged to Elizabeth Killian, and that Lucetta Badgett was her sole heir by a former marriage, and was married to Noah H. Badgett, are conceded facts.

Miles Killian and Elizabeth, his wife, had no children of that marriage, and, consequently, Killian, at the time of joining his wife in making the deed of trust, had no estate in the lands by courtesy, but only a right to rents and profits during the life of his wife.

The lands were the property of his wife; she alone had power to declare a trust upon them. Washburn on Real Property, vol. 2, p. 270, says: "Upon the question who may make a declaration, or create a trust, which shall attach to an estate, it may be stated in the first place, that it must be one who has the legal title in the same; his act is the source, or origin, of two estates, which flow on afterwards independent of each other, in point of ownership, until they merge by being again united in one person."

Killian was a mere nominal party to the deed, and was not properly a *cestui que trust*, because the legal estate did not pass from him to Badgett, the trustee; it was the wife's property, and the equitable estate remained all the time in her.

By the terms of the deed, Killian acquired a life interest in the rents and profits of the land, and, also, upon mortgage or sale, the money received for the same. The trust is what is ordinarily termed an executed trust, that is, a trust in which all of the directions for its execution are given, so that the trustee has nothing to do with it but to carry out the provisions of the trust, according to its letter. Perry on Trusts, vol. 1, p. 44; 2 Washburn, p. 452; and at page 426, Washburn excepts cases where the *cestui que trust* is a *femme covert*, and, in illustration, says: "A grant, or devise, to A in trust for B, or to permit B to take the rents and profits, would be an executed trust in B, unless B was a *femme covert*, when, in order to carry out the grantor's or

devisor's intent, it would be a trust to be executed, not executed."

The deed in this case seems rather to have reserved the rents and profits to the grantors than to have entrusted the collection and payment of them to the trustee. And, as regards the mortgage of the lands, or the sale of them, the grantors reserved the power, jointly if both were living, or singly in case of the death of either, to require the trustee to act.

The effect of the deed was to separate the legal from the equitable title, the first to vest in Badgett, the trustee, and the second, or equitable estate, to remain in the *cestui que trust*, who had parted with the legal title, to enable a trustee to execute his trust.

Declarations of trust are construed in the same manner as common law conveyances, when the estate is finally limited by the deed. A trust estate, therefore, is considered, in equity, as equivalent to the legal ownership; governed, in general, by the same rules, and liable to every change in equity.

The *cestui que trust* is seized absolutely of the freehold in the construction of a court of equity.

The trust is the land; a declaration of trust a disposition of the land. As a general proposition, trusts conform to the rules of law applicable to legal estates, in respect to their direction and transmission. 2 Washburn, 456.

Where a trust has once been created, it attaches to the estate, and can never be detached from it, and extinguished, except by a union of the legal and equitable estates in one person, the equitable in such case being merged in the legal estate. Ib., 470.

This rule utterly excludes the idea of the legal and equitable estate ever uniting in Killian; never having been possessed of the legal estate, he, consequently, as *cestui que trust*, held no equitable estate. Indeed, the only estate of any description

which he held at the time he executed the deed to Moore, was his life interest, acquired under the deed.

Counsel contend that Badgett, by denying the validity of the deed, in effect, renounced the trust conferred under it. Such, we think, was not the case; the trust, once accepted, could not be renounced; nor could the trustee discharge himself of it without the consent of the *cestui que trust*, or direction of the court. Ib., 471.

Upon the death of the trustee, his heirs cannot renounce or disclaim it; the acceptance vests the estate in him, and, at his death, casts it upon the heir, who cannot discharge himself from it by disclaimer. 1 Washburn, 340.

A trustee has not only no power to relinquish his trust, or abandon it, but must execute it strictly in accordance with its terms. Perry on Trusts, vol. 2, 415, says: "The general rule is rigidly adhered to, that the power can only be executed in the mode, at the time, and upon the conditions prescribed in the deed, according to its provisions."

The power to sell, in this case, was to be invoked, upon written request, by the *cestui que trust*; the request must be to do what the deed required of him; to mortgage or sell, not to ratify a sale made by another. As regarded price, time and manner of sale, a discretion in the trustee was necessarily given, because no directions governing the trustee in this respect were given in the deed.

The trustee is always required to make a fair sale, upon full consideration, and with due regard to the rights of those entitled to the estate in remainder.

The estate reserved to Killian was, at most, an estate for life; upon proper application the trustee might have been required to mortgage or sell, but this not having been done during his life, the estate in remainder descended to, and vested in, the heir of Elizabeth Killian.

A trustee, says Perry, vol. 2, p. 69, is required to act impartially between the tenant for life, and the remainder man. When property is settled upon a trustee, to hold in trust for one person for life, and the remainder over to some other person, it is the duty of the trustee to consult the interest both of the tenant for life, and the remainder man; he must not act so as to give either the advantage, at the expense of the other. A trust is always to be executed in the most faithful and conscientious manner.

The effort of Killian to get the whole estate, worth, perhaps, $5,000 or $10,000, from the child and only heir of his first wife, to whom she had given her lands at the expiration of the life estate, and place it in the hands of his second wife, for the nominal consideration of $1, would not be tolerated in a court of equity.

In order to illustrate the real equities of the parties more clearly, let us suppose that after the death of his wife, Elizabeth, Killian had made a written request to Badgett, the trustee, for the consideration of $1, to sell the lands; to prevent the compliance with which, the heir claiming to be entitled to the estate in remainder, had filed a bill, and set forth the facts before us, and that such sale was requested by Killian, to be made for a nominal consideration, not for the purpose of affording him the means of support, but in fraud of the rights of the heir, and, in fact, to place the property in the hands of his second wife, and take from the rightful heir the estate to which she was entitled, as well by deed as by descent. We think, under this state of case, the chancellor would restrain the trustee from making the sale, and it follows, as a consequence, that if the trustee, to whom the power of sale was given, would not have been permitted to violate the spirit of the trust, for still greater reason, Killian, who never owned the land, and who, by the provisions of the deed, was only entitled to a life estate in it, could not do so. All of the equities of Killian depend upon his title to the land. The

court could not invest him, or those claiming under him, with a better title than was intended to be conveyed, and, in fact, was conveyed, by the deed of trust.

If Killian had been entitled to have this land sold, or mortgaged, and, upon written request, the trustee had refused to sell, a court of equity would have compelled the trustee to execute the trust, or would have displaced him, and had the trust executed by another.

The conceded fact that the land was the property of the wife, and the failure of issue of the marriage, left to the husband only the rents and profits of the land during the life of the wife, after which his title to them would have ceased, and by operation of law, the daughter, Lucetta Badgett, would have acquired an unqualified title; such being the case, had he alone conveyed, by deed in trust, he would have acquired no rights incident to his marriage ; but by joining with his wife in the deed, he acquired the only estate which he then claimed to hold, which, by the express terms of the deed, was limited to the period of his life.

Upon the death of Killian and wife, the purposes of the trust were completed, nothing further remained to be done by the trustee, and, at this point, a question arises as to what act was necessary, on the part of the heir, to vest in her a legal title to the land. Does she acquire it under the provisions of the deed which declares it to be hers after the death of Killian and wife, or by operation of law as heir? or is it necessary that the legal title, which was vested in the trustee for the purpose of enabling him to execute the trust, when all of the duties which devolved upon him have been completed and are at an end, be reinvested by deed or a decree of court?

Upon the examination of several authorities directly bearing upon this question, we think that when the purposes for which

the trust was executed have been all performed, or when, from death or other cause, the further execution of the trust is rendered impossible or unnecessary, the *cestui que trust*, if living, will take the legal estate conveyed to the trustee for purposes of the trust, whereby it will again be united with the equitable estate in him; or, if conveyed in remainder, it will go to the remainder man.   Perry on Trusts, 2 vol., p. 417, says: " But even a discretionary power cannot be exercised after all the purposes of the power and of the trust have been satisfied, as where all of the persons for whom the trust was created are dead, the property in specie goes to the remainder man."

In the case of *Nicoll* v. *Walworth*, 4 Denio, 386, Thomas Marston conveyed to Francis B. Winthrop certain lands, to receive rents and profits, to be applied by him to the support of Hannah Curry during her natural life, conditioned that the land be not sold during such life, and after the death of Hannah Curry, to Mary B. Marston, and her heirs.   Hannah Curry died, and a suit investigating title to the land was commenced, in which the court was asked to charge, that the deed from Marston to Winthrop vested in Mary B. Marston an estate in remainder in the premises for the residue of the term, which estate vested in possession upon the death of Hannah Curry, and under the title thus shown, the defendants were entitled to a verdict. The court refused to give the instructions, and the defendants brought error.

When the case came to be considered in the court of New York, Jewet, judge, said:

" The first inquiry is, what estate passed to Winthrop by the deed from Marston, authorizing Winthrop to receive the rents and profits to be applied for the support of Hannah Curry during her life ; it was a trust recognized by the common law; being an active trust, it vested the entire legal estate in the trustee,

determinable by the expiration of the term, or the death of Mrs. Curry, whichever should first happen."

"The rule of the common law is, that the trustee takes that quantity of interest only, which the purposes of the trust require, and the instrument creating it permits. The legal estate is in the trustee so long as the execution of the trust requires it, and no longer, and then it vests in the person beneficially entitled."

In the case under consideration, Lucetta Badgett was the party beneficially interested in the estate, entitled to it in remainder after the death of Killian, and his wife Elizabeth, and, after their death, she took the legal estate, and was entitled to maintain her action in ejectment, to be put in possession of it.

The case has been ably argued by counsel on both sides, and reference made to numerous authorities. Those cited on part of the defendants were to sustain the position assumed by counsel that Miles Killian was a *cestui que trust*, and held the equitable estate to the lands; and, holding such title, he had a right to convey the same by deed, and did make a conveyance to Moore, and from Moore to Ruth Keating, under which defendants claim to be the owners of the land in controversy, which we must hold not to be the case.

The judgment and decision of the court below must be reversed and set aside, with costs, and the cause remanded, with instructions that a decree be rendered for plaintiffs, Badgett and wife, the deeds from Killian to Moore, and from Moore to Ruth Keating, be set aside, as creating a cloud upon their title; that the title to the lands in controversy be decreed to plaintiffs, and an inquiry of damages be taken and decreed for the use and occupation of the lands by defendants.