## WAITS v. MOORE.

### Opinion delivered January 18, 1909.

1. ADVERSE POSSESSION—PRESUMPTION.—In the absence of evidence to the contrary, the presumption is that the possession of land is in accord with the record title. (Page 22.)

2. LACHES—WHEN A DEFENSE.—The right to plead laches as a defense is confined to claims for purely equitable remedies, to which the party seeking to enforce them has no strictly legal right. (Page 23.)

3. ESTOPPEL—SILENCE.—The owner of land whose deed is upon record is not required to look up any one contemplating the purchase of his land and disclose his title, but may rely upon the constructive notice of his title given by the record. (Page 23.)

Appeal from Washington Chancery Court; *T. H. Humphreys,* Chancellor; reversed.

*Williams & Buchanan,* for appellant.

There is nothing in the evidence to show that appellant knew of her rights, or had any information with reference to them until a few days before she proceeded to assert them. In view of the unfortunate situation of this appellant, to *presume* that she should have had such knowledge would be unreasonable and inequitable. The doctrine of laches and estoppel does not apply here. 6 Am. Rep. 112; 62 Ark. 316; 102 U. S. 87; 10 Ark. 212; 43 Ark. 21.

*McDaniel & Dinsmore, R. J. Wilson* and *Walker & Walker,* for appellees.

1. The finding by the chancellor that appellant had notice of the conveyance by her father to her has sufficient support in the evidence and circumstances. His findings of fact will not be disturbed on appeal unless clearly against the preponderance of the evidence. 68 Ark. 314; 71 Ark. 605; 77 Ark. 216; 78 Ark. 420; 85 Ark. 83.

2. If it be conceded that appellant had no notice of her father's deed of November 8, 1872, until shortly before bringing her suit, she nevertheless fails to show such a state of affairs as would relieve her of a charge of laches. By her own admission the knowledge she acquired of the execution of the deed was not due to any effort on her own part to acquaint herself of her rights; also, she was present when her father made the deed to Flowers. She must have known the consideration paid. She lived in the vicinity while Flowers expended money and labor in enhancing the value of the premises. Her claim of ignorance is not enough; she should show to the court what efforts she made to ascertain her rights. 75 Ark. 312. Causes of action must be prosecuted within a reasonable time. What constitutes a bar for failure to prosecute in a reasonable time is determined by the circumstances of each case. 22 Ark. 1 and cases cited; 42 Am. Dec. 753; 7 Johns. Ch. 123; 3 Pet. 48, 52; 10 Pet. 223. Courts of equity will not interfere to grant relief where there has been gross laches in prosecuting rights, or long acquiescence in the assertion of adverse claims. 52 Ark. Dec. 220, and cases cited; 60 Ark. 453; 81 Ark. 352; *Id.* 432. Notice of facts and circumstances which would put one of ordinary intelligence and prudence upon inquiry is equivalent to knowledge of all the facts which a reasonably diligent inquiry would disclose. 58 Ark. 84.

BATTLE, J. On the 18th day of May, 1906, Mary F. Waits brought suit in the Washington Chancery Court against Oscar Moore, Melvin Moore and William Moore, and for cause of action against them alleged in her complaint as follows:

On the 8th day of November, 1872, John D. Moore, the father of plaintiff and Melvin and William Moore, being the owner of the east half of the northwest quarter of section thirty-two, in township fifteen north, and in range thirty-two west, and in Washington County, Arkansas, conveyed it, except twenty acres, to plaintiff by deed which is of record in the recorder's office of Washington County. At this time plaintiff was an infant of about five years of age. Her father continued to reside on the land until on or about the 16th of June, 1900, when he endeavored to convey it with other lands to M. I. Flowers. Thereafter her father, John D. Moore, bought other lands,

known and described as the "Valley Farm" (commonly known as the "Home Place"), upon which he resided until the 26th of September, 1905, when he died testate, devising the Valley Farm, of the value of $4,000, to his sons, Melvin and William Moore, and bequeathing to plaintiff the sum of five dollars. During his last illness he requested his two sons to pay to her the sum of fifty dollars as compensation for her services and attention to him in his last illness.

The defendants, knowing that the lands in section thirty-two had been conveyed to her by her father, sought to obtain a deed from her to the same in order to protect them against any action Flowers might bring against them to recover damages caused by failure in the title of the lands purchased by him; and did in March, 1906, induce her to execute such deed to one of them, representing and causing her to believe that the land thereby conveyed constituted the "Valley Farm," devised to Melvin and William Moore, and thereby induced her to execute it, when she would not have done so had she known the facts. She asked that the deed executed by her be set aside.

Oscar, Melvin and William Moore answered the complaint against them and denied that John D. Moore ever conveyed to plaintiff the land in section thirty-two, and that she executed a deed for this land to any one of them, but, on the 22d day of March, 1906, did, for the consideration of fifty dollars, by her deed grant, bargain, quitclaim and convey to Melvin and William Moore a tract of land in Washington County, known as the "Valley Farm," which constituted no part of the lands in section thirty-two.

Some time in the year 1906 plaintiff brought an action in the Washington Circuit Court against M. I. Flowers and P. B. White to recover possession of the east half of the north west quarter of section thirty-two in township fifteen north and range thirty-two west. They answered and denied that plaintiff is the owner of the land. Flowers alleged that he is the owner and in possession of the north half of the tract of land in controversy, and White alleges that he is the owner and in possession of the south half. They pleaded the seven years statute of limitation.

By way of cross-complaint, they allege that John D. Moore, on the 16th day of June, 1900, conveyed the land to Flowers, who

entered into the possession of the land and paid taxes, and made valuable and lasting improvements on it, and sold and conveyed the south half of it to his co-defendant, P. B. White, who entered into possession of such half and paid taxes and made valuable and lasting improvements thereon, and pleaded that plaintiff was estopped by her conduct and barred by laches from maintaining this action, stating the acts of estoppel and laches. They, Flowers and White, asked the court for a decree quieting their title to the lands in controversy as against the plaintiff.

They asked that this action be transferred to equity and plaintiff's complaint be dismissed for want of equity; and the action was transferred to the Washington Chancery Court.

Plaintiff replied, and denied the allegations of the cross-complaint.

By consent the two actions were consolidated and heard as one. After hearing the evidence the court found as follows: On the 8th day of November, 1872, John D. Moore and his wife conveyed to plaintiff the land in section thirty-two, except twenty acres thereof, the plaintiff being about five years of age at that time. On the 16th day of June, 1900, John D. Moore conveyed the same lands to M. I. Flowers, and he conveyed the south half of it to P. B. White. Plaintiff knew that the land had been conveyed to her on the 8th day of November, 1872, but never asserted any claim or ownership to it until about the first day of April, 1906, and for a long period of time permitted John D. Moore to hold and occupy it as his own and adversely to the plaintiff. And the court cancelled the deed executed by John D. Moore and wife to plaintiff as a cloud upon the title of Flowers and White, and dismissed the complaints for want of equity, and she appealed.

We find no evidence that the possession of John D. Moore was adverse to his daughter, the appellant, until he sold the land to Flowers on the 16th day of June, 1900, within seven years next before the bringing her action against him. In the absence of evidence to the contrary, the presumption is that the possession was in accord with the true title, which was in appellant. *Muller* v. *Fraley,* 23 Ark. 735; *Ringo* v. *Woodruff,* 43 Ark. 469.

Appellant was not guilty of any laches in commencing and prosecuting her suit against Oscar, Melvin and William Moore.

Her cause of action, if any, accrued in that case in March, 1906, and she brought her suit on the 18th day of May following.

Laches is an equitable defense, and the right to plead it or take advantage of it is confined to claims for purely equitable remedies, to which the party seeking to enforce them has no strict legal right, and can not be properly pleaded in courts of law, especially in actions where the plaintiff is seeking to enforce a "strict legal right." *Rowland* v. *McGuire,* 67 Ark. 320; *McFarlane* v. *Grober,* 70 Ark. 371; *Chatfield* v. *Iowa & Arkansas Land Company,* 88 Ark. 395. The action brought by appellant against Flowers and White is an action at law, and was instituted to enforce a purely legal right, and laches is not a defense against it.

There is no evidence that appellant is estopped by her conduct or otherwise from claiming the land in controversy. She testified that she was with her father, John D. Moore, when he sold the land to Flowers, but there is no evidence that she and Flowers were present at the same time, and were brought in the presence of each other at the time the sale was pending. Her deed was upon record, and she was not bound to look up any one contemplating the purchasing of her land or making improvements upon it and disclose to him her title, but she had a right to rely upon the constructive notice of her title given by the record. *Wiser* v. *Lawler,* 189 U. S. 260, 271; *Bramble* v. *Kingsbury,* 39 Ark. 131; *Simpson* v. *Biffle,* 63 Ark. 289, 300.

The court found that all the lands in controversy were conveyed to appellant by her father, except twenty acres. We find no evidence of this exception, unless it be in the allegations of the complaint in the suit against the Moores. We are without evidence to show the effect of the exception if made.

Flowers and White occupied the land and made valuable improvements on it. Their liability for rents and profits and right to value of improvements remain to be determined.

The decree of the chancery court is reversed, and the cause is remanded with directions to the court to ascertain if any valid exception of twenty acres of the land in controversy was made and not conveyed by the deed executed to appellant by John D. Moore and wife, and to render a decree accordingly, and to ascertain the rents and profits for which Flowers and White, or

either of them, may be liable, and the right of either or both of them to value of the improvements made on the land, under sections 2754 to 2758 of Kirby's Digest, both included, and to render a decree accordingly.