LESSER *v.* REEVES.

Opinion delivered February 23, 1920.

1. ADVERSE POSSESSION — HOMESTEAD.—As the adult heirs of deceased have no right to possession of the homestead until the youngest child is 21 years old, possession can not be adverse to them until that time.

2. EQUITY—LACHES—LEGAL RIGHT.—The doctrine of laches has no application where the plaintiffs are not seeking equitable relief and the action is not barred by the statute.

3. EQUITY—LACHES.—Without a breach of duty there can be no laches.

4. EQUITY—LACHES—CHANGE OF CONDITION.—Laches is negligence by which another has been led into changing his condition with respect to the property in question, so that it would be inequitable to allow the negligent party to be preferred upon his legal rights to the one whom his negligence has misled.

5. MORTGAGES—SALE UNDER POWER WITHOUT APPRAISEMENT.—A sale under a power contained in a mortgage without complying with the statutory requirement of appraisement is invalid and vests no title.

6. MORTGAGES—POSSESSION OF MORTGAGEES.—Where mortgagees had the right under the mortgage to take possession and rent or foreclose, and did take possession under an invalid sale under a power at which they bought, they will be treated as mortgagees in possession.

7. MORTGAGES—DEED OF MORTGAGEES IN POSSESSION.—One to whom mortgagees in possession executed a deed could acquire thereby no greater title or interest than they had.

8. MORTGAGES — MORTGAGEES IN POSSESSION — ACCOUNTING.—Mortgagees in possession are properly charged with the rental value of the land and credited with the taxes paid and necessary repairs made.

Appeal from Lee Chancery Court; *A. L. Hutchins,* Chancellor; affirmed.

## STATEMENT OF FACTS.

On the 1st day of December, 1917, appellants brought this suit in equity against appellees and asked that the latter be declared mortgagees in possession of the land described in their complaint and that an account be taken of the rents and profits between the parties to the suit.

Appellees defended on the ground that there had been a foreclosure of the mortgage in question by a sale under the power contained therein and that the mortgagees had become the purchasers at the sale. They also pleaded the statute of limitations and laches as a defense to the bill.

The material facts are as follows: The land involved in this suit comprises 160 acres and belonged to Thomas Reeves in his lifetime. Reeves occupied the land as his homestead until the date of his death. He executed a deed of trust to the land to secure an indebtedness which he owed to Lesser & Bro. Subsequently Reeves died leaving his widow and three minor children surviving him. The widow remained on the land for two years subsequent to the death of her husband and during this time Lesser & Bro. furnished her with supplies with which to make a crop on the land.

Thomas Reeves left three minor children surviving him; of these Maude was born November 7, 1881, and became twenty-one years of age November 7, 1902. Luther was born March 4, 1888, and became twenty-one years of age March 4, 1909; Mamie was born July 31, 1893, and became twenty-one July 31, 1914. Mamie was married when she was seventeen years of age. Maude

married A. J. Moore while a minor and died in June, 1916, leaving surviving her several minor children. -

Mrs. Reeves made two crops on the place after her husband died. She then saw that she was not paying the mortgage indebtedness off and that she was not able to work the land. She married again and lived with her second husband and her children by her first husband in the vicinity of the land in controversy for two years. They all then moved to Woodruff County, where they have since lived.

Luther Reeves testified that he first learned of his interest in the property in 1916; that until that time he thought the property was lost to them and did not make any investigation of his rights. Mrs. Mamie Harp testified to substantially the same state of facts.

George Slaughter was a witness for appellants and was sheriff of Lee County at the time the mortgage is alleged to have been foreclosed by a sale under the power contained in it. He knew Thomas Reeves from 1877 until the date of his death. He said that he had a faint recollection that there was a mortgage on Reeves' homestead and that he performed some official act relative to the mortgage.

A. S. Rogers, also a witness for appellants, testified that he was deputy sheriff under Geo. W. Slaughter and knew Thomas Reeves rather intimately. He stated that he remembered distinctly that there was a foreclosure on the homestead of Reeves and that Slaughter sold it at the front door of the courthouse.

Morris Lesser testified for appellant that he was a member of the mercantile firm of Lesser & Bro., and that Reeves started trading with them in March, 1890; that Reeves executed a deed of trust on his homestead for the purpose of securing them for merchandise and supplies which they should furnish him; that the deed of trust secured an indebtedness of about $434.05. Lesser further stated that he remembered bidding in the land at a sale of it under the power contained in the mortgage; that the widow then left the property and that the mort-

gagees took possession of it; that they rented it out for several years at $75 per annum to various parties; that in 1905 they entered into a contract with A. B. Smedley to rent the land and also gave him an option to purchase it. Smedley went into possession of the land in 1905 under this contract and has been in possession of it ever since. In May, 1910, Lesser & Bro. conveyed the land to Smedley. The rental value during all this time has been $75 per year. Lesser also exhibited a cash book which contained an item under the date of December 15, 1896, showing a charge of $4 for an amount paid for appraising the Reeves place. In the same book under the date of February 15, 1897, Lesser & Bro.'s real estate account is charged with $16.35 on account of the Thomas Reeves place. Lesser stated that this was the cost of the foreclosure under the power of sale contained in the mortgage.

Other facts will be stated or referred to in the opinion.

The court found that the appellants should be treated as mortgagees in possession, and that the mortgage indebtedness had been paid off, and that Lesser was indebted to appellees in the sum of $51.48.

The court further found that appellees were the owners of the land and entitled to recover possession thereof.

A decree was entered accordingly, and the case is here on appeal.

*Daggett & Daggett*, for appellants.

1. The chancellor found the facts favorable to defendant, but erred in the application of the law to the facts. He erred in finding that Lesser was a mortgagee in possession, even though the sale was voidable. Plaintiffs were barred by limitation and laches. It is conceded that on the death of Thomas Reeves, intestate, the lands descended to his minor children. Under the decision in *Kissinger* v. *Wilson*, 53 Ark. 403, and similar decisions following it, the minors (with their mother) had a homestead estate in the land and an estate of inherit-

ance. Although not barred by limitation, the doctrine of laches should be applied. 103 Ark. 251; 87 *Id.* 232; 75 *Id.* 312; 19 R. C. L., § 433. Aside from laches the decree is erroneous as to the law applied to the facts. Lesser was not a mortgagee in possession. 42 Pac. 35; 38 N. W. 765. His possession was adverse and he was not a mortgagee in possession. 107 Fed. 545. If such be the rule of construction, the acts of and possession of Smedler and Lesser bring them within it and the action of plaintiffs is to recover the land and for the use and occupancy thereof, against which Lesser or Smedler, by subrogation, would have an offset for the amount of the mortgage which, with interest from January 1, 1891, amounts to $537.30, or a total of $2,106. But plaintiffs are barred by limitation as to recovery of rents except for the three years immediately before suit was brought, with interest, or a total of $286, which should have been declared a lien on the lands. Plaintiffs are barred from the recovery of rents, even though Lesser was a mortgagee in possession under the invalid foreclosure sale. Lesser was chargeable with rents from 1905 to 1918 at $75 per annum, as Smedler continuously occupied the lands under his contract and deed from Lesser. Neither of the plaintiffs can recover rents. Maude's right expired November 7, 1902, Luther's March 4, 1909, and Mamie's July 21, 1914. 95 Ark. 74; 122 *Id.* 539.

2. Plaintiffs are barred from recovery of rents from Smedler by the "Betterment Act." Authorities are not needed, as good faith and honest belief in title held and ignorance of title being questioned by another who holds a better right. Lesser was never a mortgagee in possession, but held under the belief that he owed the land under the foreclosure and under color of title under the deed executed by Julius Lesser.

3. The statement of account by the chancellor is erroneous, as the amount due Lesser was $1,082. The

doctrine of laches should control this case, 55 Ark. 92, but if not the chancellor erred in stating the account.

*W. J. Lanier,* for appellee.

It is conceded that Mrs. Mamie Harp, the youngest daughter of Thomas Reeves, married A. J. Moore, one of the plaintiffs, with whom she lived and who was the mother of the five Moore children, minors; married when she was 17 years old and died in 1916. Const. 1874, art. 9, sec. 8; Kirby's Digest, § 3882. The appellees are not barred. 53 Ark. 403. Laches is not imputable to infants. Neither Mrs. Moore, Luther Reeves nor Mrs. Harp did anything to mislead or prejudice defendants; neither Lesser nor Smedler could have believed they had title, for the evidence clearly shows that the second trust deed (W. P. Weld, Tr.), under which they claim the land was sold, covered 160 acres—township 3 north, range 3 east. Lesser claims the trust deed was filed in 1894; the records were open to him and Smedler and their attorneys. No trust deed has been issued under the pretended sale and the trust deed had not been lost or destroyed. At the time Lesser claims the land was sold, Mrs. Harp was less than three, Luther only seven and Mrs. Moore only fourteen years of age. Smedler purchased on ten years' time the land when two of the children were minors. He can not be hurt, as he has not paid as much as rents, the buildings were permitted to deteriorate and decay, the fences rotten and land worn out by consant use and inattention and only five acres new land cleared since death of Reeves when Lesser took possession.

The delay worked disadvantage to defendants. Neither negligence nor laches can be imputed to the minor children.

Occupiers of minor's property must pay rents. 61 Ark. 26; 37 *Id.* 316; 52 *Id.* 213; 51 *Id.* 429. Mrs. Moore was married at 17 and continued married until her death and her children were minors and not barred. 67 Ark.

320; 87 *Id.* 428. Abandonment of homestead by widow does not affect minor children. 115 *Id.* 364; 29 *Id.* 625; 92 *Id.* 143. Where there is a legal and equitable remedy to the same subject-matter, the latter is under the control of the same statute bar as the former. 16 Ark. 129; 19 *Id.* 16. Equity by analogy is governed by the statute of limitations the same as law. 20 Ark. 136; 46 *Id.* 25; 47 *Id.* 301; 92 *Id.* 540.

Minors can not abandon their homesteads, and, being subject to the control of others, do not forfeit it. 92 Ark. 143; 37 *Id.* 316; 29 *Id.* 633. Delay for seven years on part of creditors in procuring letters of administration to be issued on estate of debtor is such laches as will defeat creditor's claim, so the debt due J. Lesser & Brother at death of Reeves in 1893 is barred. 56 Ark. 663; 37 *Id.* 155; 48 *Id.* 277; 63 *Id.* 405; 73 *Id.* 440; *Ib.* 185.

Mortgagee in possession is held to the exercise of such care and diligence as a provident owner would exercise and is charged with what reasonable diligence, care and attention he should have received. 2 Jones on Mortg. (4 Ed.), § 1123. Mortgagee suffering insolvent tenant to remain in possession is responsible for rents. *Ib.,* § 1123. A mortgagee does not take the rents absolutely, but subject to the debt and to be applied to the mortgage debt. 36 Ark. 17; 40 *Id.* 275; 38 *Id.* 285; 29 *Id.* 506; 55 *Id.* 326; 37 Cyc. 1140-1; 35 Am. Dec. 39.

Appellants are mortgagees in possession and should be charged with entire rents and interest, credited with taxes, with 6 per cent. interest, and amount due, if any, by Thomas Reeves at his death to J. Lesser & Brother, a balance struck and a decree against appellants for difference; however, if the court should hold rents barred prior to three years before filing suit, then all sums due from Thomas Reeves on date of his death are also barred by laches, together with all taxes prior to three years next before instituting suit.

HART, J. (after stating the facts). The chancery court was right in holding that appellees, who were the plaintiffs below, were not barred by the seven-year statute of limitations. The land in question was the homestead of Thomas Reeves, and he lived on it with his wife and minor children until his death. The adult heirs had no right to the possession of the homestead until the youngest child became twenty-one years of age and the statute of limitations did not begin to run against them until the termination of the homestead of the youngest child. Mrs. Mamie Harp was the youngest child and did not become twenty-one years old until July 31, 1914. This suit was commenced on December 1, 1917. Hence the suit was not barred by the statute of limitations. *Smith* v. *Scott*, 92 Ark. 146.

This is conceded by counsel for appellants. They invoke the doctrine of laches as a bar to appellees' right of action, but we can not agree with their contention under the facts as disclosed by the record. The doctrine of laches has no application where the plaintiffs are not seeking equitable relief, but to enforce a legal title and where their action is not barred by the statute of limitations in reference thereto. *Davis* v. *Neil*, 100 Ark. 399; *Fourche River Lbr. Co.* v. *Walker*, 96 Ark. 540; *Ward* v. *Sturdivant*, 96 Ark. 434, and *Waits* v. *Moore*, 89 Ark. 19. The facts of this case do not bring it within the principles announced in *Ayers* v. *McRae*, 71 Ark. 209, and *Jackson* v. *Becktold Printing & Book Mfg. Co.*, 86 Ark. 591.

In the first mentioned case, there was a foreclosure sale under a mortgage, but the mortgagor knew of the sale, was present at it and purchased a portion of the property included in the mortgage. He was presented with an account of his indebtedness before the sale and made no objection to its correctness. After the sale he made propositions to buy the land back and knew that the mortgagee who purchased at the sale was cutting timber from the land and raised no objection to him doing so. The court held that under the circumstances he was guilty of laches, whether his defense to the irregularity

of the foreclosure sale was substantial or merely technical.

In the last mentioned case there was a foreclosure in equity, and the heirs of the mortgagor were duly served with process. Their attorney and their agent agreed that the decree of foreclosure might be entered in vacation. The court held that the decree was invalid on that account, but that the plaintiffs were guilty of laches which proved fatal to the relief asked for by them. There the mortgagees became the purchasers of the land and were placed in possession of it after the sale had been confirmed. They sold large quantities of timber from the land, changed the fences and in every respect used it as their own. The plaintiffs had been advised that they could set the sale aside because the decree had been rendered in vacation, yet they made no objection to the confirmation of the sale or the entry into possession by the purchasers under the deeds executed to them pursuant to the decree of foreclosure. They knew that the land was being sold off by the purchasers at the foreclosure sale and they did not move to set aside the decree until nearly five years after it was rendered. They did not claim to have been misled by any act of the parties to the suit and no excuse was given for the delay which was attributable to their own negligence. Hence the court held they were guilty of laches in not sooner bringing their suit.

Without a breach of duty there can be no laches. In *Tatum* v. *Arkansas Lumber Co.,* 103 Ark. 251, and in numerous other cases this court has said that there must be some supervening equity calling for the application of the doctrine of laches. In that case we recognized that laches is negligence by which another has been led into changing his condition with respect to the property in question, so that it would be inequitable to allow the negligent party to be preferred upon his legal rights to the one whom his negligence has misled.

Again in the case of *Reaves* v. *Davidson,* 129 Ark. 88, it was contended that the plaintiffs were barred by laches,

and the court said there was nothing in the evidence in the case to show that the defendants had been led into changing their condition with respect to the land, so that it would be inequitable to allow the plaintiffs to be preferred upon their legal rights. Hence the relief was denied.

No misleading conduct can be attributed to appellees in the present case. It can not be said that there was inexcusable delay on their part in ascertaining or asserting their rights, or that their failure to bring the suit sooner was due to culpable negligence and inattention to their rights. The deed of trust in question contained a power of sale, and our statute imposes conditions upon the exercise of the power of sale contained in a mortgage. The statute requires that the property shall first be appraised and that at the sale it shall bring two-thirds of the appraised value. In *Craig* v. *Meriwether,* 84 Ark. 298, it was held that a sale under the power in a mortgage without complying with the statute is invalid, and that no title can be vested thereunder.

In the case at bar, while Lesser testified that there was a sale under the power contained in the mortgage, his testimony is very vague and uncertain. It is not shown that the property was advertised for sale or that it was appraised as required by the statute. The mortgagees became the purchasers at the sale, and no deed was executed to them. Lesser testified that he went into possession of the land after this pursuant to the sale. Mrs. Reeves testified that she made two crops on the land after her husband's death and then left it because she thought she could not pay off the mortgage indebtedness. She lived in Lee County for two years and then moved with her minor children to Woodruff County, where they have since resided. She was not present at the sale under the mortgage and did not know that appellants claimed that a sale had been made thereunder until some time in 1916 when her children went back to

Lee County on a visit to some relatives and ascertained that fact.

According to Lesser the sale was had in 1896. At that time the children were minors, the oldest being only about twelve years old. After they became of age they did nothing whatever to mislead appellants and moved with reasonable diligence in bringing the suit after they discovered that they had an interest in the land. They found this out in 1916 and brought this suit in the latter part of 1917. There was no change in the condition of the parties after they ascertained their rights. Appellants were not misled to their prejudice by any conduct of appellees and the appellees were not guilty of laches. The mortgage indebtedness was due at the time Mrs. Reeves left the land, and the mortgagees had the right to take possession of the land and rent it out for the purpose of paying that indebtedness or to foreclose the mortgage.

As we have already seen, the foreclosure was invalid, and under the circumstances their possession of the land will be attributable to their rights under the mortgage, and they were properly treated by the chancellor as mortgagees in possession. It is true that the mortgagees executed a deed to A. B. Smedley to the land, but of course he could acquire no greater title or interest in the land than they possessed. It is not shown that appellees knew of his purchase or that he was misled to his prejudice by their action in the matter.

The court properly charged the mortgagees with the rental value of the land for each year after they went in possession of it, and allowed them credit for taxes and necessary repairs. Indeed, the proof shows that the houses on the place had been allowed to run down greatly. We do not deem it necessary to set out in detail the evidence with regard to the rents, taxes, etc. This is set out in the decree of the chancellor and an examination of the record leads us to the conclusion that the chancellor's finding is correct. The chancellor held the mort-

gagee liable for a reasonable rent after he took possession of the mortgaged property.  It is true that Smedley purchased the land from Lesser and entered into possession under his deed.  He made certain payments thereunder which the chancellor credited on the mortgage indebtedness.  Smedley acquired no greater rights than Lesser.  He entered into possession under the direction of Lesser, and became his tenant.  When he purchased from Lesser he only succeeded to his rights.  The amounts charged against Lesser, including the payments on the purchase price by Smedley, only amounted to a reasonable annual rent for the property, and the evidence warranted the chancellor in finding that Lesser was indebted to appellees in the sum of $51.48.

It is further contended by counsel for appellant that after the sale by Lesser to Smedley, section 2754 of Kirby's Digest, our betterment statute, applies, and they invoke the rule laid down in *Green* v. *Maddox,* 98 Ark. 397. We do not deem it necessary to decide this proposition. The rights of Smedley under the betterment statute are not before the court.  The question is as to the rights of Lesser, and that case has no application to his rights.

It follows that the decree must be affirmed.