NORRIS *v*. SCROGGINS.

Opinion delivered June 20, 1927.

1. MORTGAGES—POWER OF SALE.—While the power of sale contained in a mortgage or deed of trust is valid, and a sale thereunder may confer a good title, the powers of the trustee foreclosing thereunder are limited and defined by the instrument under which he acts, and he has only such authority as is thus expressly conferred upon him, together with the incidental and implied powers necessarily included therein.

2. MORTGAGORS—POWER OF SALE.—Where several deeds of trust were executed by different persons to the same trustee, covering the same property, maturing at different times and for different amounts, the trustee, upon default, was not authorized to sell the property under all the deeds as if there were only one indebtedness; no such power being conferred by any of the deeds.

3. MORTGAGES—MORTGAGEE IN POSSESSION UNDER VOID FORECLOSURE SALE.—A mortgagee who enters into possession of the mortgaged premises under a void foreclosure sale is presumed to hold as mortgagee in possession.

4. MORTGAGES—ADVERSE POSSESSION.—A mortgagee in possession cannot acquire title by adverse possession against his mortgagor.

5. ESTOPPEL—INFANTS.—Even though a life tenant estopped herself to question the title to land sold at a void foreclosure sale by permitting the purchaser to make valuable improvements, such estoppel has no application to infant remaindermen.

6. MORTGAGES—REDEMPTION FROM VOID FORECLOSURE SALE.—One or more tenants in common have a right to redeem property after a void foreclosure sale for the benefit of themselves and their cotenants, even if the latter are estopped to make such redemption.

7. MORTGAGES—MORTGAGEE IN POSSESSION—REDEMPTION.—So long as the relation of mortgagee in possession under a void foreclosure sale exists, the property is subject to redemption by owners and persons having a right to redeem.

Appeal from Union Chancery Court, First Division; *J. Y. Stevens,* Chancellor; affirmed.

*Mahony, Yocum & Saye,* for appellant.

*Pat McNalley* and *Jordan Sellers* and *Coulter & Coulter,* for appellee.

WOOD, J. The property involved in this controversy is two lots in the city of El Dorado, Arkansas, one 100 feet by 282 feet, and the other 28 feet by 100 feet. For convenience we will designate the larger lot as the "Scroggins lot" and the smaller lot as the "Church lot."

In 1912 Bill Scroggins and his wife executed a deed of trust to J. L. Wallace, trustee, covering the two lots and other property to secure an indebtedness of $104.25 owing to T. H. Norris, which indebtedness matured October 17, 1913. Bill Scroggins died in October, 1913, testate. His will provided that, after payment of his debts, his wife, Catherine Scroggins, should have all of the property he possessed at the time of his death for her natural life. At her death the property was to pass to their three grandchildren, Oscar Staples, Estelle Staples Ward and Ethel Staples Galbert, until they became of age, and then the property should be divided equally between Oscar Scroggins, Della Scroggins Jenkins, Mollie Scroggins Manley, William Scroggins, the same being the children of the testator and the grandchildren mentioned. It was mentioned in the will that, in the event the property could not be divided satisfactorily between the parties named, it should be sold and the proceeds equally divided between them. The will was admitted to probate on March 20, 1925.

At the time of the death of Scroggins all of his children were living and of age, and he and his wife and several of the beneficiaries under the will were living on the Scroggins lot, and those surviving, and residing thereon, continued to do so. In January, 1914, Catherine

Scroggins, Will Scroggins, Oscar Scroggins, Della Scroggins Jenkins and Mollie Scroggins Manley, beneficiaries under the will, executed a deed of trust to J. M. Wallace, trustee, to secure an indebtedness to T. H. Norris in the sum of $162.50, which matured in October, 1914. This deed of trust covered also the two lots and other property. The deeds of trust mentioned were in the usual form. There is a provision in each of the deeds of trust to the effect that, in case of default in payment of the indebtedness, the trustee is authorized to take possession of the property, and, "on giving ten days' notice of publication on the courthouse, in the county of Union, may and shall sell said property for cash in hand," etc. There is also a provision to the effect that the sale shall be made at such place as the trustee may designate, and also that the trustee may sell the property at private sale without notice, and a provision to the effect that the trustee shall make deed to the purchaser.

On November 25, 1914, default having been made, the trustee sold both lots at one sale, and executed a deed to the purchaser, T. H. Norris. The deed made by the trustee to the purchaser, among other things, recites:

"And whereas, default having been made, the said premises were, on the 25th day of November, 1914, after fully complying with the conditions of the said deed of trust, sold at public auction to the said party of second part for the sum of $468, being the highest sum bid for said property, the said property having been duly appraised and said sum being more than the two-thirds appraised value thereof, the notice of the time and terms of said sale having been first given by published notice in the Union County Tribune. Now therefore I, said party of the first part, for and in consideration of the premises and the said sum of $468 to me in hand paid by the said party of the second part, do hereby grant, bargain, sell and convey unto the said party of the second part, and to his heirs and assigns forever, the said premises, to-wit:" (Then follows a description of the property and the date of the deed, June 21, 1916).

The widow and two or three of the children and several of the grandchildren were living on the Scroggins lot at the time of the foreclosure sale, and all of the children were living and were of age at that time. Immediately following the sale, in 1914, T. H. Norris, the purchaser, took possession of the property. The widow and adult heirs recognized the sale, and the widow and two or three of the children rented the property from Norris and remained on the same for something like a year, when they moved away. Norris continued in possession of the property, renting the same to different parties. He made improvements thereon after his purchase—spent about $1,500 in repairs on the premises. Norris paid the taxes on the property each year, beginning with the year 1916. On June 14, 1909, Scroggins and wife executed a deed to the trustees of the M. E. Church of El Dorado, covering the lot designated as the church lot. The consideration named in the deed was $500, and on the same day the trustees of the church executed a deed of trust in favor of W. J. Pinson in the sum of $500, W. R. Morgan being named as trustee in the deed of trust. On November 25, 1921, W. R. Morgan executed what is designated as a trustee's deed to Rhoda Wysinger, which recites that there was a default in the payment of the indebtedness secured by the deed of trust; that the property was sold at public auction under the authority contained in the deed of trust, by the substituted trustee, W. R. Morgan, and was purchased by Wysinger, who paid therefor the sum of $880. The deed recites that the property was first duly appraised and that the sum paid for same was more than two-thirds of the value thereof.

This action was instituted by the plaintiffs, the widow and heirs of Will Scroggins, against T. H. Norris, on the 30th of August, 1924, for the purpose of setting aside the trustee's deed to Norris. Plaintiffs alleged that they were the owners of the property under the will of Scroggins; that T. H. Norris was in possession of the same under a trustee's deed, which they alleged was void for the following reasons: (1) The purported foreclosure

sale was had after the death of the mortgagor. (2) No statement of any alleged debt was furnished to plaintiffs, and no demand was made of them. (3) No notice of any kind was given plaintiffs. (4) No appraisers were appointed as required by law. (5) No appraisal was made as required by law. (6) No notice of sale was given as required by law. The plaintiffs set up that the possession of Norris was that of a mortgagee in possession, and asked that he be required to account to the plaintiffs for the rental value of the property. The plaintiffs, Estelle Staples Ward and Oscar Staples, set up that they were minors at the time of the sale of the property under the deed of trust, and that one of them was still a minor, and that they should be allowed to redeem the property for the benefit of themselves and their cotenants. The prayer of the complaint was for a redemption of the property and an accounting, and for all proper relief.

Rhoda Wysinger, by order of the court, was made a party defendant. She answered, and made her answer a cross-complaint against the plaintiffs and the defendant Norris, alleging, in substance, that she had no knowledge sufficient to form a belief as to the alleged claim of title of the plaintiffs under the will of Scroggins. She admitted that William Scroggins at one time did acquire title to all the land described in the complaint. She alleged that she was the owner and in possession under the trustee's deed to the lot in controversy, designated as the church lot, and had been in adverse possession under color of title for more than fifteen years. She deraigned title from the Scroggins through mesne conveyances. She prayed that the plaintiffs' complaint be dismissed so far as it seeks to recover the lot claimed by her, that her title be quieted, etc.

The defendant, Norris, answered, denying all the allegations of the complaint of plaintiffs and the cross-complaint of Rhoda Wysinger, and set up title under the trustee's deed as above set forth, and title by limitations.

He also pleaded laches and estoppel against the widow and heirs of Scroggins.

The above are the issues raised by the pleadings. The court heard these issues upon the exhibits set forth and the depositions of witnesses, and found in favor of the plaintiffs and rendered a decree in their favor as to the Scroggins lot, and appointed a master to state an account between the plaintiffs and Norris. The court found in favor of the defendant, Rhoda Wysinger, on her cross-complaint as against the plaintiffs and the defendant, Norris, as to the church lot claimed by her, and entered decrees according to its findings, retaining jurisdiction for a final accounting.

The defendant, Norris, prosecutes this appeal.

1. The appellant claims title by his trustee's deed, and by adverse possession thereunder. The appellant did not acquire title under the trustee's deed, because the trustee, in making the sale of the property in controversy, did not pursue the power contained in the deeds of trust. These deeds of trust are separate instruments, and, although they cover the same property and name the same person as trustee, nevertheless they were executed by different persons on different dates for different indebtednesses maturing at different times. Neither of these deeds of trust confers authority upon the trustee, in default of payment of the amounts due under the separate instruments, to treat these amounts as one indebtedness and to proceed to sell the property as if there were one indebtedness due by the same persons covered by one and the same instrument. In a court foreclosure there might be, upon proper showing, a consolidation of causes and all rights and equities of the parties worked out and adjusted prior to the order of sale, and one sale would be valid and binding, when effectuated under the orders and directions of the court. But, certainly, unless such power is conferred by the deed of trust, a trustee has no right to exercise such power, and in doing so he causes legal complications which necessarily would deter bidders at the sale, and thus be a legal

fraud upon the makers or mortgagors in the deeds of trust or mortgages thus sought to be foreclosed.

In 19 R. C. L., page 592, § 407, it is said: "While the power of sale contained in a mortgage or trust deed is valid, and a sale thereunder may confer a good title on the purchaser, the powers of the person foreclosing thereunder are limited and defined by the instrument under which he acts, and he has only such authority as is thus expressly conferred upon him, together with the incidental and implied powers that are necessarily included therein." See also 19 R. C. L., § 402, page 587.

There is no incidental or implied power to be derived from the power expressly conferred upon the trustee in these separate deeds of trust under review that would authorize the trustee to conduct the sale in the manner indicated by the recitals in his deed to the appellant.

In *Littell* v. *Grady*, 38 Ark. 584, speaking of the powers to be exercised by trustees in deeds of trust, this court said, at page 589:

"Parties who execute these powers are properly held to '*uberrima fides*,' in view of the danger of oppression, and the courts of chancery have been used to interfere to prevent any unnecessary sacrifice, or unfair disregard of the rights of the debtor. Where the trustees or beneficiaries do not wish to become the subjects of this jealousy, and are diffident of enduring the test, they may always invoke the aid of equity, and foreclose under its supervision. It is always the safe plan for all parties. 'Sales under powers,' says Mr. Perry (Trusts, § 602, X), 'in deeds of trust, or mortgages, are a harsh mode of foreclosing the rights of the mortgagor. They are scrutinized by courts with great care, and will not be sustained unless conducted with all fairness, regularity, and scrupulous integrity. Upon very slight proof of fraud, or unfair conduct, or of any departure from the terms of the power, they will be set aside'."

In *Badgett* v. *Keating*, 31 Ark. 400, it is said: "The general rule is rightly adhered to, that the power can only be executed in the mode, at the time, and upon the

conditions prescribed in the deed according to its provisions." And in *Stalling* v. *Thomas*, 55 Ark. 326, 18 S. W. 184, we said: "The right to foreclose a mortgage at private sale is derived from the power conferred by the mortgage, and, independent of it, does not exist. The instrument creating such a power determines its extent, as well as the manner and conditions of its exercise; and those relying on such a sale must show that it was made in obedience to this power." *Craig* v. *Meriwether*, 84 Ark. 298, 105 S. W. 585. See also *Lesser* v. *Reeves*, 142 Ark. 320-329, 219 S. W. 15.

It is wholly immaterial whether the makers of these deeds of trust were actually defrauded by the method pursued by the trustee in treating the deeds of trust as one instrument. It is simply a case where appellant acquired no title under his purchase at the trustee's sale, because no power was conferred upon the trustee by the deeds of trust to make the sale as the same was conducted by him. As we have seen, the sale and the trustee's deeds were void unless the deeds of trust conferred upon the trustee the power to make the sale as he did make it, which is not the case. The appellant therefore acquired no title by the trustee's sale and deed made thereunder.

2. The appellant testified that he took possession of the property following the foreclosure of the deeds of trust in 1914 and he had been in possession ever since, making improvements on the premises to the extent of fifteen or sixteen hundred dollars. His first tenant, after taking possession of the property, was Catherine Scroggins, the widow of Bill Scroggins, and some of the Scroggins children. They rented the property for about a year after Bill Scroggins died, and appellant has continued to occupy the property through tenants since that time. But this possession of appellant, under his void trustee's deed, does not vest him with title under the seven-year statute of limitations.

"Where a mortgagee enters into possession of the mortgaged premises under a void foreclosure, he is pre-

sumed to hold as mortgagee in possession, and limitation does not run in his favor, or in favor of his grantee, against a suit by the mortgagor.  *  *  *  The mortgage relation still continues between the purchaser at such void sale and the owner of the equity of redemption, the right of redemption continues, and the statute of limitations does not begin to run against the right until actual notice is given to such owner by the party in possession under such void sale, that he claims to hold in some other right than that of mortgagee or assignee of the mortgage, or he clearly makes it known by his acts that he holds adverse to the mortgage." 2 Jones on Mortgages, page 781, § 1152.

We have recognized the above doctrine announced by Mr. Jones in *Swift* v. *Ivery,* 147 Ark. 141, 227 S. W. 600, where we said: "Appellants therefore, being in the attitude of a mortgagee in possession, acquired no title by adverse possession, as pleaded and claimed by them." That doctrine is as applicable to the facts of this record as it was in the above case, which is quite similar. Regardless therefore of what may be the rule in other jurisdictions, this court is committed to the doctrine that a mortgagee in possession cannot acquire title as against the mortgagor.  Therefore the appellant had no title by adverse possession to the Scroggins lot.

We deem it unnecessary to determine, under the facts of this record, whether the widow and four adult children of Bill Scroggins would be estopped by their conduct from maintaining this action to redeem the Scroggins property, even if this were a suit by them alone against the appellant for that purpose.  For, if it be conceded that these adult plaintiffs would be estopped by their laches from maintaining an action to redeem the Scroggins lot from appellant, it is certain that the plea of estoppel by conduct could not avail the appellant as against the minor plaintiffs, who had a vested interest in the property under the will of their grandfather, Bill Scroggins, as we construe such will.  Conceding, then, without deciding, that the widow and adult heirs estopped

themselves from maintaining this action against the
appellant by their conduct in permitting the appellant'
to take possession of the property under the trustee's
deed and in allowing him to make valuable improvements
thereon and paying the taxes and as the landlord and
owner, nevertheless this conduct on their part would
not operate to divest their title and interest in the prop-
erty and vest the same in the appellant. Most
assuredly, then, this conduct on the part of the adult
devisees would not operate to divest the title of the
devisees of Bill Scroggins who were minors at the time
of such conduct, nor preclude or estop them from main-
taining their action to redeem the Scroggins property
from the mortgage. They were devisees under the will,
owners of an undivided interest in such property.

In 31 C. J. 1005, § 33, it is said: "As a general
rule the doctrine of estoppel has no application to an
infant, even though he had reached the age of discretion."
One of the plaintiffs, Oscar Staples, was still a minor,
and appears by his next friend, and another, Estelle
Staples Ward, had just reached the age of 21 when this
action was instituted. They asked to redeem the prop-
erty for the benefit of themselves and their cotenants.
They unquestionably had the right to do so. Mr. Pomeroy
says:

"Any person who holds a legal estate in the mort-
gaged premises, or in any part thereof, derived through,
under, or in privity with the mortgagor, and any person
holding either a legal or equitable lien on the premises,
or any part thereof, under or in privity with the mort-
gagor's estate, may also in like manner redeem from
the prior mortgage. No such redemption, however, is
possible unless the mortgage debt is due and payable,
nor unless the mortgage is wholly redeemed by payment
of the entire amount of the mortgage debt. The debt
being a unit, no party interested in the whole premises,
or in any portion of them, can compel the mortgagee to
accept a part of the debt, and to relieve the property
*pro tanto* from the lien. Furthermore, if the person

redeeming has only a partial interest in the premises, and there are other partial owners also interested in having the lien of the mortgage removed from their estates—such as co-owners, life tenants, reversioners, remaindermen, and the like—he cannot compel them, in the first instance, to advance their proportionate shares for the purpose of paying off the debt; he must himself redeem the whole mortgage, and his only equity against them consists in his right to enforce the mortgage upon their estates as a security for obtaining a subsequent contribution." 3 Pom. Eq. Jur., § 1220.

The trial court decreed that the appellant be repaid for the cost of his improvements, with interest, as a part of the terms of the redemption from the mortgage. Appellees are not complaining of the decree in this respect, and surely the appellant has no right to complain. Appellant is still a mortgagee in possession, and, as long as that relation obtains, the property is subject to redemption by those having that right, under the doctrine announced by Mr. Pomeroy, *supra*.

3. Concerning the church lot, the plaintiffs below, the appellees here, the widow and heirs of Scroggins, have disclaimed any title or interest in the church lot, leaving the controversy as to that lot to be determined between her and the appellant. In view of what we have already said, it becomes unnecessary to give the controversy between appellant and appellee, Rhoda Wysinger, any separate treatment. We have already held that appellant, being a mortgagee in possession of both lots, could not acquire title thereto by adverse possession, and he had no title thereto under his trustee's deed. Appellee, Wysinger, has title under a trustee's deed, regular on its face, and sufficient, in the absence of any attack made thereon and proof of its invalidity, to establish her title to the church lot and to have the same quieted in her. There is no plea or proof of laches as to her.

The decree is therefore correct in all respects, and the same is affirmed.