## RAILWAY COMPANY *v.* JAMES.

Decided January 3, 1891.

1. *Vendor's lien—Redemption from foreclosure.*
    The right of redemption from a foreclosure of a vendor's lien is exactly analogous to the right of redemption from a mortgage foreclosure.

2. *Mortgage—Redemption.*
    Where a mortgagor refuses to apportion his lien, the purchaser of a parcel of the premises subject to the mortgage may, before foreclosure, redeem the whole premises by paying the entire mortgaged debt.

3. *Parties necessary to foreclosure—Redemption.*
    One who has purchased from the mortgagor a portion of premises which he had mortgaged to another is not a necessary party to a suit by the mortgagee to foreclose the lien on the remainder of such premises, nor has he any right to redeem from a sale under such foreclosure.

4. *Mortgage foreclosure—Fraud—Laches.*
    A foreclosure sale of mortgaged premises will not be set aside for fraud and inadequacy of price, and a resale ordered where the application for a resale was without excuse delayed more than two years after the sale and until it had become obvious that the value of the lands had greatly increased since the sale.

APPEAL from *Jefferson* Circuit Court, in Chancery.

JOHN A. WILLIAMS, Judge.

Suit by Thomas S. James, administrator of Thomas S. James, deceased, against C. M. Neel and the Pine Bluff, Monroe and New Orleans Railway Company, to foreclose a vendor's lien upon land.

James sold to Neel block 40, comprising four lots, consecutively numbered, in Old Town addition to the city of Pine Bluff. The sale was upon credit; the deed reserved a vendor's lien. Subsequently James released his lien upon lot 3 and all of lot 2 except forty feet off the north side. Afterwards Neel conveyed·to the Pine Bluff, Monroe and New Orleans Railway Company, a company of which he was president, a strip forty feet wide off the north side of lots 1 and 2.

Suit was brought by the administrator of James to foreclose the vendor's lien upon lot 4 and all of lot 1 except

On page 81, second line of second syllabus, for " mortgagor "
read *mortgagee.*

forty feet off north side. The railway company was not made a party. Decree was rendered against Neel for the unpaid purchase money, and the land condemned to be sold upon failure of Neel to pay the amount adjudged due. In accordance with the decree, a sale was made on May 21, 1887, and approved by the court, the administrator being the purchaser.

There being a balance of the purchase money due, the administrator, at the March term, 1888, brought this suit against the railway company to foreclose the vendor's lien upon the forty feet off the north side of lots 1 and 2. The railway company answered on April 4, 1888, and subsequently, on April 29, 1889, filed a cross-complaint, in which it alleged that it had not been made a party to the suit to foreclose the lien upon lot 4 and all of lot 1 except forty feet off north side, that no one bid at the sale except James, tha the balance claimed to be due on the decree was conceived for the purpose of compelling it to pay the same, and that the part purchased was at the time worth more than the amount of the decree; and asked that it be allowed to redeem all of lots 1 and 4 and the north forty feet off lot 2 from the administrator by paying the entire lien debt.

The court denied the prayer of the cross-bill, decreed in favor of the administrator for the balance due the estate, and ordered that, upon failure in payment thereof, the land be sold by the commissioner. From this decree the railway company has appealed.

*M. A. Austin,* for appellant.

Appellant was not bound by the decree of foreclosure in the suit of *James* v. *Neel.* It was not made a party nor served with notice, and it was a necessary party. Mansf. Dig., sec. 4940; Wiltsie on Mortg. Forecl., secs. 1406-50; Story's Eq. Pl., sec. 193; 37 Vt., 345; 101 Ind., 258; 50 Ill., 274; 35 Iowa, 288. Those persons who own, or have an interest or estate, in the land, are debtors to the mortgagee, and *beyond doubt necessary parties.* If they are not, their rights remain unaffected, and they retain all their

rights of redemption, even from the *purchaser after the sale.*
Pom. Rem., sec. 342; Dan. Chy. Pr., vol. I, p. 179, and
cases *supra*; 98 U. S., 34; 99 Ind., 45; 11 Ark., 104; 27 *id.,*
219; 21 *id.*, 91. Mere notice of the decree or sale would
not bind appellant, nor cut off any right of redemption. not
legally foreclosed. I Paige, 49; 16 N. Y., 234; 35 *id.*, 385.
The decree and sale therefore as to appellant was a nullity.
Jones on Mortg., sec. 1947; 50 N. Y., 336; 41 How. Pr., 33;
99 Ind., 45; 77 Ind., 52; 19 Iowa, 56.

2. The appellant has the right to redeem the *whole* of
said land from the lien of James. 13 Ark., 533; 34 *id.*, 397;
2 Pom. Eq. Jur., sec., 1220; Jones on Mortg., secs. 1394,
1366; 16 Ind., 361; 28 Ala., 352; 4 Pet., 190. Any one who
has an interest in the land, and would be loser by a fore-
closure is entitled to redeem. Jones, Mortg., sec. 1055; 27
Ba., 230; 8 Cush., 46; 44 N. H., 9; 21 Miss., 149; 9 Mich.,
465; 13 Met. (Mass.), 494. So firmly is this doctrine fixed
that it cannot be taken away or lessened, except by unmis-
takable deed or strict legal foreclosure. Jones, Mortg., sec.
1041; 29 Ark., 667; 13 Ark., 127; 23 N. E. Rep., 698; 99
Ind., 45; 9 Wis., 552; 37 Vt., 345. See also 7 Mass., 355;
I Penn., 33; 49 Me., 260; Jones, Mortg., sec. 1062–3, 1073;
2 Pom. Eq. Jur., 1221. Appellant has also the right to com-
pel appellee to first resort to the lands unsold by Neel. 31
Ark., 203; *ib.*, 91.

3. The suit should have been consolidated with that of the
bank. 2 Pom. Eq. Jur., 1221; 43 Conn., 274; Jones, Mortg.,
sec. 1069. The case in 37 Vt., 345, is decisive of the bank's
right to redeem. It also had a right to contribute to the
payment of the redemption money and share in the benefit.
Pom. Eq. Jur., secs. 1211 and 1212; 11 Gray (Mass.), 276;
45 Conn., 513. The suits should have been consolidated.
Mansf. Dig., sec. 4945.

*M. L. Bell* for appellee.

1. The appellant is not entitled to redeem that part of the
land in which it has no interest, and which had been sold
under the decree. Jones on Mortg., secs. 1394–5.

2.  Appellee sold first Neel's equity of redemption in the lots not claimed by appellant.  This was all it could have asked, if it had been made party to the first suit by James. 2 Pom. Eq. Jur., sec. 1224.

3.  As between the mortgagor and his grantees, the parcels remaining in his hands are primarily liable for the whole mortgage debt, and should be exhausted before having recourse to that claimed by his vendees.  2 Wash. R. P., 202, 206; 2 Jones, Mortg., secs., 1620-32.  This was done.  See 31 Ark., 234; 34 N. W. Rep., ——; 1 So. Rep., 506.

COCKRILL, C. J.  It is argued that the railway company, which was the owner of the equity of redemption in a separate parcel of the premises upon which James' vendor's lien existed, had the right, prior to the sale under James' decree of foreclosure, to redeem the entire premises by paying the entire lien debt; and that the decree has not cut off that right, inasmuch as the company was not a party to the suit to foreclose.

**1. Foreclosure of vendor's lien—Redemption.** The rights of the parties, so far as those questions are concerned, are exactly analogous to those of a mortgagee and a subsequent vendee of the mortgagor of a part of the encumbered premises.  A consideration of the equitable rules which govern those relations makes it clear that such a purchaser has not the unconditional right to redeem the whole mortgaged premises.

**2. Mortgage—Redemption.** The rule in such cases is sometimes stated to be, that a part owner, or owner of a parcel, of the mortgaged premises may redeem the whole by paying the entire mortgage debt. But that is a generalization, and not an accurate statement of the rights of the respective parties.  The reason of the rule rests solely upon the mortgagee's right to hold his security intact and to receive his debt entire.  The purchaser of a part of the premises from the mortgagor acquires no inherent right to be subrogated to the mortgagee's advantageous hold upon the other parts.  He succeeds only to the mortgagor's rights in the parcel purchased.  If the mortga-

gor's conveyance contains a warranty against the incum-
brance, the vendee of a part is then clothed with two reme-
dies for his protection, viz.:   He may force the mortgagee
to resort to the other parts of the premises before subject-
ing his to the satisfaction of the mortgage debt; and he
may redeem his parcel.   He has no other rights as against
the mortgagee.   If the latter is willing to apportion his se-
curity and receive the due proportion of his debt for the re-
lease of the alienated parcel, the vendee thereof can demand
no more; if the mortgagee is unwilling to do that, he will
be compelled to submit to equitable terms, which, by the es-
tablished rule, are that he shall be made whole by the pay-
ment of the entire mortgage debt.

But that is done only to prevent a failure of justice, and
not in recognition of a right in the vendee to acquire an
interest in portions of an estate which he has in no man-
ner bargained for.   His purchase of a part of the prem-
ises from the mortgagor does not impair the mortgagee's
right to proceed to make his money out of the residue
by any means permissible before the sale of the parcel.
If the mortgagee takes a conveyance of the equity of re-
demption of the unalienated portion of the premises from
the mortgagor at its fair market value, in satisfaction *pro
tanto* of the mortgage debt, he may resort to the alien-
ated parcel for collection of the residue of the debt.   If his
mortgage contains a power of sale, and he causes the un-
alienated parcels to be first sold, the mortgagor's vendee is
uninjured.   2 Jones on Mort., secs. 1857–1859.   The strictest
good faith in these transactions is all the latter can demand.
*Hawhe* v. *Snydaker*, 86 Ill., 206–7.   The mortgagee is not
required to proceed against the entire premises for a fore-
closure in equity, but may go against any parcel at his elec-
tion.   If he proceeds only against the unsold part of the
premises, he does only what the owner of the other part
might require him to do first; and a fair sale of such part
is all the owner of the other parcel can demand.   In the ab-
sence of fraud, the mortgagor's vendee is not in an attitude

3. **Parties to foreclosure— Redemption.**

to complain if the property brings less than its value at the judicial sale, because the remedy pursued by the mortgagee, like that of the power of sale under the mortgage, or of the purchase of the equity of redemption by stipulation, is an incident to the mortgage, subject to which he acquired his rights. Gross inadequacy of price, in connection with slight circumstances indicating an unfair advantage on the part of the mortgagee, may be taken as legal fraud upon the rights of the mortgagor's vendee of the parcel, and justify the opening of the bid and an order for a resale of the premises. *Gilbert* v. *Haire,* 43 Mich., 283. But if there is no fraud, he cannot question the price brought at the judicial sale. The proceedings under the decree are binding upon him, as they are upon other creditors of the mortgagor, who have no other right than to demand that his assets shall not be squandered to their detriment. If the mortgagee proceeds in equity against the mortgagor for a foreclosure and sells the whole premises, without making the vendee of the alienated parcel a party, the latter's right to redeem his part is of course unimpaired by the decree. The purchaser at the judicial sale acquires a defeasible title to the alienated parcel, subject to be defeated by redemption, and an indefeasible title to the residue. The owner of the alienated parcel cannot then be forced to redeem the whole premises by paying the whole debt. The decree has dismembered the security, and he may redeem his parcel alone. He has no other right. *Dukes* v. *Turner,* 44 Iowa, 575; *Green* v. *Dixon,* 9 Wisc., 532; *Kirkham* v. *Dupont,* 14 Cal., 559. If the property has been sold *en masse,* the amount to be paid for redemption is not fixed by the sale; and the court ascertains the proportion the parcel should contribute toward the discharge of the mortgage debt in order to effect a redemption. Cases *supra.* The opinion in the case of *Watts* v. *Julian,* 122 Ind., 124, relied upon by the appellant, the reasoning of which goes upon the theory that the vendee of the part has the unconditional right in such a case to redeem the

whole or require a resale after decree, is not in line with the authorities on that subject.

The doctrine deducible from the principles which govern the rights of the parties in cases like this may be stated as follows : A purchaser of the equity of redemption of a part of the mortgaged premises may force a redemption of the entire premises, and be subrogated to the rights of the mortgagee, only when the latter has failed to resort first to the other parts of the premises for the satisfaction of the mortgage debt, and neglects or refuses to apportion his debt and security upon equitable principles so as to permit the release of the alienated parcel.

In the case in hand the mortgagee has resorted by equitable foreclosure to the premises not conveyed by the mortgagor before proceeding against the parcel conveyed by him to the railway. The railway's right to redeem its parcel remains untouched. It has no right, as we have seen, to redeem the other parts.

The premises sold under the decree did not bring their full value, but the price paid was not greatly inadequate ; and the proof does not warrant a finding that the foreclosure proceedings operated as a fraud upou the appellant. There is no cause therefore for requiring a resale. On the contrary, a fuller statement of the facts shows that there is no equity in the railway's position. At the time of the conveyance by Neel to the company he was president and chief owner of the railway. The consideration recited in his conveyance was an inadequate price for the property conveyed, and there is no other evidence that the railway paid anything for it. The sale under the decree was duly advertised, and Neel, who was still the president of the company, was apprised of it. The company delayed its application for a resale for more than two years after James' purchase under the decree, and it was not made until it had become obvious that the value of the lands had greatly increased since the sale under the decree. No excuse was offered for the delay. If the right to cause the sale to be

4. Laches applying forr₂ sale.

set aside had existed, it would have been lost by the unreasonable delay. It is the established rule that the right to a resale must be exercised promptly. It would be manifestly inequitable to permit the person having the right to sit by and speculate on the rise or fall in the value of the land sold, at the expense of the purchaser. That is what the railway company appears to have attempted in this case.

Let the decree be affirmed.