(6 Misc. Rep. 189.)

### SHEARER v. FIELD.

(Supreme Court, Special Term, Wayne County.    December, 1893.)

1. JUDGMENT—RES JUDICATA—QUESTIONS DECIDED.
    Plaintiff, in ejectment for part of a tract of land purchased by defendant at a mortgage foreclosure sale, claimed such part as purchaser at a foreclosure sale under a subsequent mortgage. It was found that plaintiff was the owner in fee of the part sued for, but that defendant was a mortgagee in possession, and as such was entitled to retain possession. *Held*, that it was adjudicated in such action that the foreclosure proceeding under which plaintiff claimed was valid, and that the foreclosure proceeding under which defendant claimed was not binding on plaintiff, and such adjudication was conclusive as to the right of plaintiff or his grantee to redeem for the mortgage under which defendant claimed.

2. MORTGAGES—REDEMPTION OF PART OF MORTGAGED PREMISES.
    Where the owner of the equity of redemption of a part of mortgaged premises asks to redeem, the redemption will be restricted to such part, where it would work an injustice to the person holding under the mortgage to require him to convey the entire premises on the receipt only of the mortgage debt.

3. SAME—COSTS.
    Plaintiff in an action to redeem from a mortgage will be required to pay the costs, though he is successful in the suit, where he has not put defendant in default by an offer to redeem, or by a tender of any amount of money.

Action by Shearer against Field to redeem land from a mortgage.

H. R. Durfee, for plaintiff.

Charles G. Saxton and James C. Smith, for defendant.

RUMSEY, J.   It is undisputed that the defendant is in possession of these premises, claiming as a purchaser at a sale under a judgment of foreclosure of what is known as the "Briggs mortgage." It is also undisputed that the 4½ acres of which the plaintiff claims to be the owner was subject to the lien of that mortgage; that it was owned by one Barney Welch, who was in possession at the time of the foreclosure of the Briggs mortgage; and that Welch had given a mortgage upon that parcel of land, which was subsequent to the Briggs mortgage. It is undisputed, too, that this subsequent mortgage was owned at the time of the foreclosure by Conway P. Wing. Wing had been named as a defendant in the action brought to foreclose the Briggs mortgage. Whether or not summons had been served upon him, or whether there was a sufficient admission

of service by him, so that he became subject to the jurisdiction of the
court in the foreclosure action, is one of the questions litigated in
this suit. It is also undisputed that after the defendant, Field,
had become the purchaser of the premises under the Briggs mort-
gage, Wing commenced a proceeding by advertisement to foreclose
his mortgage; that such proceedings resulted in a sale; and that
the premises were bid off by Prudence M. Wing. Whether these
statutory proceedings were so conducted as to vest any title in the
purchaser under them was also a question which was sought to be
litigated in this case. But, in the view which I have been forced
to take of the case, I have not found it necessary to examine any
of the disputed questions of fact which have arisen, because, as it
seems to me, every question sought to be litigated on this trial has
been foreclosed by the judgment of this court in the case of Wing
v. Field, the judgment record of which was put in evidence by the
plaintiff. In that case Prudence M. Wing, the purchaser under the
Welch mortgage upon Conway Wing's foreclosure, brought an ac-
tion against Field, the defendant here, to recover possession of the
4½ acres which she had bought upon that foreclosure. She set out
in her complaint the facts by virtue of which she claimed to be
the owner in fee of those premises. The defendant, Field, admit-
ting his possession of the premises, sought to maintain it as lawful
upon the ground that he was the purchaser under the foreclosure
of the Briggs mortgage, and that, because of a right he acquired
under that mortgage, he was entitled to remain in possession of
the land. It will be seen from this short statement that the ulti-
mate question litigated in that action was whether the plaintiff,
Prudence M. Wing, was entitled to the possession of the premises.
That question was to be decided by investigating the extent of
her title, and, if that title proved to be a good one, then by examin-
ing whether there was anything in the claim of the defendant which
justified him in his retention of the possession of the premises in
spite of the title which was vested in the plaintiff in the case.

It is not material to the estoppel of a judgment which party suc-
ceeds in the action. Whatever may be the result, the judgment
is still an estoppel, which may be relied upon by either party so
far as it finally adjudicated upon his rights. Ordinarily, to be sure,
a judgment against a party is not invoked by him as deciding any-
thing in his favor against his opponent, but yet it may be so in-
voked if anything has been decided favorable to him which was
essential to the rendition of the judgment. The extent as to which
the judgment is conclusive upon the parties to the action is not at
all doubtful. As stated by Mr. Freeman, it is that the judgment is
conclusive only as to facts directly and distinctly put in issue, and
the finding of which must be necessary to uphold the judgment.
Freem. Judgm. § 257. The judgment is conclusive upon every mat-
ter actually and necessarily decided in the former suit, though
not then directly the point in issue. If the facts involved in the
second suit are so cardinal that without them the former decision
cannot stand, they must be taken as conclusively settled in the first
suit. Id. § 256. The rule is well illustrated by the case of Gates

v. Preston, 41 N. Y. 113. It appeared in that case that Gates had brought an action against Preston, who was a physician, for the recovery of damages resulting from Preston's unskillful and negligent treatment of a broken arm of Gates. After the action for malpractice had been begun, Preston brought an action in a justice's court for his services for treating the arm. In that action he recovered a verdict for the value of his services. Upon the trial of the malpractice case the judgment in the justice's court for the value of the services was pleaded, and allowed as a conclusive adjudication that the physician had performed the implied contract between himself and his patient that he would treat the fractured arm with ordinary skill, and, therefore, that there had been no malpractice. It appeared upon the trial that no question at all had been raised in the justice's court as to the negligence of the physician. The court held, however, that as the plaintiff in the action for services could not recover unless he had proved a performance of the contract on his part to treat his patient with ordinary skill, the adjudication that he was entitled to recover necessarily involved a finding that he had done what the law required by way of performance of this contract. The rule in every case is that the judgment is final as to every fact litigated and decided in the action having such a relation to the issue that its determination was necessary to the determination of the issue. House v. Lockwood, 137 N. Y. 259, 33 N. E. 595. Whenever, therefore, it is necessary to see how far any judgment is an adjudication, one must go back of the mere form of the judgment, and ascertain what were the facts necessarily decided by it, and without which the judgment could not have been rendered. It will be noticed that the pleadings in the ejectment case admitted that Field was in possession of the premises. It will be seen, therefore, that the question presented for decision was whether that possession was lawful. The legal conclusion that the possession was lawful might have arisen from a failure on the part of the plaintiff to establish that she had any title to the premises. If such had been the case, undoubtedly the judgment would not have operated as an adjudication upon the extent of the title of Field, because he would not have been put to any proof of the nature of his possession. But when it appeared, as it did in that case, that the plaintiff had a title to the premises, then it became necessary to examine into the nature of the defendant's possession, and to ascertain whether, under any rule of law, he was justified in retaining the premises against the claim of the rightful owner. When it became necessary to examine that question, it necessarily required the adjudication as to the nature of his right.

It may be said, to be sure, that the only question litigated in that action was as to the right of possession between the parties. In one sense that is true, but the right of possession depended upon certain facts from which it was a legal conclusion, so far as the existence of those facts was necessary to enable the court to draw the legal conclusion; so that the question depended upon them, so far as they are adjudicated in the action. The estoppel extends beyond what appears on the face of the judgment to every allega-

.tion which, having been made on the one side, and denied on the other, was at issue and determined in the course of the proceedings. It not only establishes the action of the party who succeeds, but it disapproves or negatives the action of the party who is defeated; and, so far as the facts must necessarily be established for every proposition, so far they must be considered as finally adjudicated between the parties. It is not the object of the suit, the recovery or fruits of the litigation alone, that constituted the estoppel, but the facts put in issue and found upon which the recovery is based; facts in issue as distinguished from evidence in controversy. Caperton v. Schmidt, 26 Cal. 479. It is not necessary to the conclusiveness of the former judgment that the issues should have been taken upon the precise point which it is proposed to controvert in the collateral action. It is sufficient if that point was essential to the former judgment. Every point which has been either expressly or by necessary implication in issue, which must necessarily have been decided in order to support the judgment, is concluded. Board of Supervisors v. Mineral Point R. Co., 24 Wis. 124. It is said by the supreme court of Massachusetts that it is allowable to reason back from the judgment to the basis on which it stands, upon the obvious principle that where a conclusion is indisputable, and could have been drawn only from certain premises, the premises are equally conclusive and indisputable with the conclusion. But such an inference must be inevitable, or it cannot be drawn. Burlen v. Shannon, 99 Mass. 200. It is apparent from the examination of the record in the ejectment case that the conclusion there reached by the court stands necessarily upon two propositions,—one, that Prudence M. Wing was the owner in fee of the premises; and the other, that Field was mortgagee in possession,—and from those two premises the court deduced the conclusion that Field was entitled to remain in possession of the land. These two conclusions were fully presented by the pleadings in that case, and, as is apparent from the findings, the judgment was the result of the conclusion which the court reached upon the questions thus presented. Upon an examination whether the parties are estopped as to certain facts by a former judgment between them, it is necessary to inquire whether the facts might have been tried in the former action, and, if they might, the findings, or even, if necessary, the testimony, may be examined to see whether or not they were litigated and determined. Smith v. Smith, 79 N. Y. 634. I think there can be no doubt that the questions litigated and determined in the action of ejectment were: First, whether Prudence M. Wing was the owner of the property; and, second, whether Field had any right which entitled him to the possession in spite of her ownership. The decision in that action, that she was the owner in fee of the property, necessarily involved the conclusion that the proceedings taken to foreclose the Welch mortgage by advertisement were valid, and vested the title in her. The conclusion found by the court in that action, that Field was only mortgagee in possession, necessarily disposed of the question whether Wing had been made subject to the jurisdiction of the court in the former action, and decided that ques-

tion adversely to the claim of the defendant here. By that judg-
ment he is necessarily concluded here as to both questions, and
for that reason I have not felt at liberty to decide the various
·questions of fact and law presented, upon which it is claimed that,
as an original question, the court should decide that Wing became
subject to its jurisdiction in the former suit. Neither have I felt
at liberty to decide the questions raised as to the validity of the
proceedings to foreclose the mortgage by advertisement. It having
been made to appear that the plaintiff's grantor was the owner in
fee, and Field was mortgagee in possession only, it necessarily fol-
lows that the plaintiff is entitled to redeem the premises.

It is well settled that, although he has the equity of redemption
to a part only of the mortgaged premises, he has no right to con-
fine his redemption to that part alone, but, if he comes to redeem,
he must redeem the whole mortgaged premises. Boqut v. Coburn,
27 Barb. 230, 233. To make that redemption after the purchaser
has entered into possession, he must pay the amount of the mort-
gage debt and interest, and the value of the improvements made by
the purchaser, less the rents and profits received by him. Jones,
Mortg. § 1075. Such is the case where there has been no judgment.
But where there has been a judgment for foreclosure, a subsequent
incumbrancer, who desires to redeem, would be· compelled to pay,
not only the amount due upon the mortgage, with interest, but also
the costs to which the party has been put by way of asserting his
rights. Thus costs were paid by Field, and for that reason I think
he should be entitled to have them paid back to him upon this re-
demption. But the rule which requires the owner of the equity of
redemption of a part of the mortgaged premises to pay the whole
amount of the mortgage, and redeem the entire premises, is one
which was established for the benefit of the mortgagee, and it will
not be enforced where the equities of the mortgagee are such that
injustice will be done to him if he be compelled to convey the whole
premises upon the receipt only of the mortgage debt. It is very
clear here that to compel the defendant, who has paid over $6,400
for these premises, to convey the whole of them upon receipt of the
mortgage debt, with interest and costs of the foreclosure, would
be to work a great injustice to him; and for that reason I think that
he should be permitted, if he sees fit, to give up that portion of the
premises of which the plaintiff owns the equity of redemption, and
the money which stands in the place of the land conveyed to the
railroad company, and, upon accounting for the rents and profits of
that part of the premises, should be adjudged to be the owner in fee
of the remainder of the land bought. Such was the course pursued
in the case of Boqut v. Coburn, 27 Barb. 230, 233, which was held
to be proper at the general term. In actions of this sort the usual
rule is that the plaintiff who comes into court should pay the costs
to the defendant although he is successful in the suit. Jones, Mortg.
§ 1111. That should be, I think, the rule in this case. The plaintiff
·comes into court, asking for a favor against the defendant. He has
not put the defendant in default by any offer to redeem, or by the
tender of any amount of money, so that the defendant was perfectly

justified in defending this action until the equitable rights of the parties should be adjusted. That being so, I think it is a proper case for the application of the usual rule that, where a party comes into court to redeem from a mortgage, he usually pays the costs, although he obtains the relief sought. Parker v. Austin, 15 Wkly. Dig. 474; Benedict v. Gilman, 4 Paige, 58.