ROWLAND *v.* GRIFFIN.

Opinion delivered April 29, 1929.

422

*Robert A. Kitchen,* for appellant.

*Joe Joiner,* for appellee.

Wood, J. On September 5, 1919, John Alderson and wife executed to James A. Rowland an oil and gas lease on eighty acres of land in Union County, Arkansas, for a period of ten years and as long thereafter as oil and gas, or either of them, were produced from the land under the terms of the lease. This was before oil and gas were discovered in Union County. On October 2, 1920, Alderson and wife executed a deed of trust to Finn Craig, as trustee, in favor of J. A. Rowland, on the tract of land above mentioned. This deed of trust was to secure an indebtedness to Rowland in the sum of $648.68, bearing interest at the rate of ten per cent. per annum, evidenced by note of that date. On April 28, 1920, Rowland sold the lease above mentioned, and same passed by mesne assignments to the Sun Company. On February 4, 1921, Alderson and wife executed a deed of conveyance to A. G. Griffin, conveying to him ''an undivided one-eighth of, and an interest in and to, all the oil, gas and other minerals in, under, and upon'' the lands above mentioned, subject to the lease executed on the land to Rowland on September 5, 1919. The deed gave to Griffin the right to collect ''such undivided one-eighth part and interest due us [Alderson and wife] or that may become due, as royalties under the aforesaid lease, should oil, gas or other minerals be produced

thereunder.'' The deed warranted the title to the lands and such part of oil, gas and other minerals and royalties therein conveyed, and gave to Griffin the right to enter upon the lands for the purpose of producing, saving and removing oil, gas, and other minerals, and for collecting and receiving the royalties under the terms of the lease. This deed to Griffin was filed for record in Union County on December 23, 1921. On December 10, 1923, Rowland and Craig foreclosed the mortgage on the lands above mentioned against John Alderson and wife. Rowland became the purchaser thereof at the foreclosure sale, and received the commissioner's deed on February 9, 1924. In the foreclosure proceedings mentioned Griffin was not made a party. The makers of the deed of trust did not redeem.

In August, 1926, this action was instituted by A. G. Griffin against Rowland and W. M. Coates, to whom Rowland had executed a deed conveying an undivided one-half interest in the oil, gas, and other minerals in and under the lands covered by the deed of trust. The trustee, Craig, and also Alderson and wife, makers of the deed of trust, were made parties. In his complaint Griffin alleged, in substance, that he was the owner of one-eighth interest in the oil, gas, and other minerals in, under, and upon the lands described in his complaint, and he asked to be allowed to redeem from Rowland the title he acquired by the foreclosure of the deed of trust mentioned. He alleged that Rowland refused to permit plaintiff to redeem, and refused to accept the mortgage indebtedness with interest. Plaintiff offered to pay into court the amount of the mortgage indebtedness with interest, and any other amounts the court might find necessary to enable plaintiff to redeem. Plaintiff also asked that the mineral deed from Rowland to Coates be canceled; and in an amendment to his complaint he asked for an accounting by Rowland for rents received by him and the $1,200 paid him by Coates as the consideration for the deed from Rowland to him. Griffin in

his pleadings contended that his deed from Alderson and wife gave him the right to redeem the entire property sold, and to be subrogated to the rights of Rowland, the mortgagee. He asserted that, before he obtained his deed from Alderson, he required Alderson to secure a written statement from Rowland authorizing Alderson to convey to Griffin all the minerals then owned by Alderson. He prayed to be permitted to redeem as set forth, and that his title to the undivided one-eighth interest in all the oil, gas, and other minerals in the lands mentioned be quieted in him, and for all other legal and equitable relief.

The pleadings on the part of the defendants admitted the facts as alleged in the complaint with reference to the instruments referred to therein and made exhibits thereto, but set up that, under the facts stated and as shown by the several conveyances, the plaintiff, Griffin, did not have the right to redeem from Rowland the entire interest, as claimed by Griffin. They admitted the right of plaintiff in the minerals to the extent of a one-sixty-fourth interest, but denied the right of the plaintiff to redeem the entire property covered by the deed of trust. They conceded that he had a right to redeem a one-sixty-fourth interest in the minerals, and asked the court to determine the amount to be paid in order to redeem said interest. Defendants denied the right of plaintiff to an accounting from J. A. Rowland of the sum collected from the sale of mineral interest to Coates, and denied that the plaintiff had the right to have title quieted to a one-eighth interest in the oil, gas, and other minerals in, under and upon said tract of land, and denied the right of plaintiff to have the mineral deed to Coates canceled. Defendant Rowland denied that he had signed a written statement authorizing Alderson to sell to Griffin all the minerals owned by Alderson, as alleged by Griffin.

The plaintiff demurred to the answer and cross-complaint, and the demurrer was overruled.

The trial court found, among other things, that, a short time after the tenth day of January, 1921, J. A. Rowland leased said land to the Sun Company for the sum of $1,200; "that the lease taken upon the said land by the defendant J. A. Rowland from John Alderson and wife, on the 5th day of September, 1919, was, on the execution of the deed of trust to the defendant J. A. Rowland by John Alderson and wife, merged into the estate created by the deed of trust; that, when the defendant leased the land to the Sun Company for the sum of $1,200, the debt due and owing to J. A. Rowland by John Alderson and wife, evidenced by the deed of trust, was settled, and the one-eighth interest in the land owned by A. G. Griffin became freed of the lien of said deed of trust."

The court further found: "That, when the defendant Rowland sold and executed the deed to W. M. Coates to one-half interest in the minerals in and under said land, one-eighth interest in and to said minerals was in the plaintiff, A. G. Griffin." The court thereupon entered a decree canceling the commissioner's deed to J. A. Rowland, which was executed pursuant to the foreclosure of the deed of trust, in so far as it affected the title of Griffin, and also canceling the deed from Rowland to Coates in so far as same affected the title to Griffin. The court further decreed that all the right, title and interest in and to an undivided one-eighth part and interest in and to all the oil, gas and other minerals in and under the lands described in the complaint be confirmed and forever quieted in A. G. Griffin, so far as the defendant Rowland is concerned. On the question of damages in favor of the plaintiff Griffin against the defendant Rowland, on account of the latter's interference with the one-eighth royalty interest of the plaintiff in the land, the court found the facts had not been sufficiently developed, and retained jurisdiction of that question for further consideration. From the decree of the court is this appeal.

The pleadings are lengthy and the testimony voluminous, but the above statement is sufficient to show the issues. Such other facts from the record as are necessary will be stated as we proceed to consider the questions presented by counsel in the order set forth in their briefs.

1. The court's decree was predicated upon its finding and conclusion of fact that the lease of Alderson and wife to Rowland was merged in the deed of trust. The court erred in its finding and holding that there was a merger. It is alleged by the appellee, and not denied by the appellants, that Rowland and wife assigned the lease to J. Edgar Pugh on April 28, 1920, and that Pugh assigned the same to the Sun Company on May 27, 1921. It is alleged by the appellee, and admitted by the appellants, that the deed of trust mentioned was executed on the second day of October, 1920. Counsel for appellee in his brief admits that the appellee alleged in his answer to appellants' cross-complaint that the lease was assigned by Rowland and wife to Pugh on April 28, 1920, and transferred by Pugh to the Sun Company, as alleged, but he says there was no proof of such allegations. Since the allegations were not denied, it was not necessary to prove them, and there was no issue joined on such allegations and no attempt to prove or disprove them. *Kenney* v. *Streeter,* 88 Ark. 406, 114 S. W. 923. True, Rowland testified, when being questioned concerning the value of the lease at the time it was sold to the Sun Company, that he sold the same about 1920 or 1921, and, upon further questioning, he stated as follows: "The gasser which was spraying oil was brought in in 1920. My recollection is I sold this lease to the Sun Company after the gasser or the first well which was spraying oil." But this testimony does not tend to controvert the undenied allegation of the appellee that the lease was sold in April, 1920. Therefore it is conclusively established that the lease to Rowland was transferred by him to another, and that the title to such lease was not in Rowland at the time the deed of trust was executed to him on October 2, 1920.

Jones, in his work on Mortgages, vol. 2, page 508, § 1080 (848), says:

"A merger takes place when a greater estate and a less meet in one and the same person, in one and the same right, without any intermediate estate, the lesser estate being thereby merged in the greater; but merger is not a necessary result of the union of the two estates in the same person. * * * Where a mortgage incumbrancer becomes the owner of the legal title, or of the equity of redemption, a merger will not be held to take place if it be apparent that it was not the intention of the owner, or if, in the absence of any intention, the merger would be against his manifest interest."

"It is the general rule that, when the legal title becomes united with the equitable title, so that the owner has the whole title, the mortgage is merged by the unity of possession. But if the owner has an interest in keeping these titles distinct, or if there be an intervening right between the mortgage and the equity, there is no merger. * * * To effect a merger at law, the right previously held and the right subsequently acquired must coalesce in the same person and in the same right, without any other right intervening." 5 Thompson on Real Property, § 4680.

Chief Justice Bellows, in *Stantons* v. *Thompson*, 49 New Hampshire, 272, at page 279, says:

"In fact, the doctrine of merger springs from the fact that, when the entire equitable and legal estates are united in the same person, there can be no occasion to keep them distinct, for ordinarily it could be of no use to the owner to keep up a charge upon an estate of which he was seized in fee simple; but if there is an outstanding, intervening title, the foundation for the merger does not exist, and as matter of law it is so declared." See also *McGuire* v. *Cook,* 98 Ark. 118, 123, 135 S. W. 840, Ann. Cas. 1912B, 776.

Applying the above general doctrine to the undisputed facts of this record, there was no merger, and the

court erred in so holding and making such holding the basis of its decree.

2. The next question is, what interest did the appellant Rowland acquire by virtue of the deed of trust? The answer is, all the title and interest owned by the makers of the deed of trust at the time same was foreclosed, because they have not availed themselves of the right to redeem the same from foreclosure sale within the time prescribed by law. See § 7411, Crawford & Moses' Digest. At the time of the foreclosure sale, Alderson and wife, makers of the deed of trust, owned the fee in the land in controversy, burdened, however, with the outstanding lease in the Sun Company and the interest which the appellee had acquired by virtue of his mineral deed from Alderson and wife.

3. This brings us to the question of whether or not the appellee had the right to redeem. It is conceded by the appellants that the appellee was not made a party to the suit for foreclosure, and that he would therefore have the right to redeem to the extent only of his interest, unless he is barred by laches. The appellants contend that the appellee is barred by laches because, at the time he acquired his mineral deed, February 4, 1921, he knew of the existence of the mortgage. The mortgage was foreclosed on December 10, 1923, and appellant did not offer to redeem from the foreclosure sale until the summer of 1926; but, in explanation of this delay to offer to redeem, Griffin testified "that he had his deed recorded in December, 1921. He was not made a party to the foreclosure suit in 1923, and did not know anything about it. He made an offer to redeem as soon as he found out that the mortgage had been foreclosed. He thought Alderson had already paid off the mortgage. Alderson was still in possession of the land." Griffin stated that the first notice he had of the foreclosure was when he discovered it by examining the record. He went immediately to Rowland and offered to redeem, but Rowland refused, and would not talk about it.

There is no testimony on behalf of the appellants to the effect that the appellee Griffin, after he had knowledge that the mortgage had been foreclosed by Rowland, stood by and permitted Rowland to expend money on the land without protesting or disclosing to Rowland his interest, and offering to redeem same. Under these circumstances, it cannot be held that the appellee was barred by laches from his right to redeem. Appellee's mineral deed was of record long before the suit was instituted to foreclose appellants' mortgage, and it was the duty of the appellants, if they intended to foreclose appellee's right of redemption, to have made him a party to their suit to foreclose. It occurs to us, under the circumstances thus disclosed by the record, that the appellee Griffin did not wait an unreasonable time before offering to redeem, and that he is not barred by laches of his right of redemption.

4. The next question for determination is that propounded by the appellants: "Has the purchaser of a part of mortgaged property, who was not made a party to the foreclosure proceedings, the right to redeem the entire equity of redemption after the period to redeem has run against the owners of the other part, or can he redeem only the interest he owns therein?" It is conceded in the above question—and, indeed, in the pleadings of the appellants—that the appellee by his mineral deed acquired an interest in the land itself, that is, to the oil, gas and other minerals in place in the land, and not merely to a royalty or rental interest in the gas, oil and other minerals after the same had been severed from the soil. The granting clause of the deed under which appellee claimed is as follows: "Do hereby grant, bargain, sell and convey unto the said A. G. Griffin and unto his heirs and assigns forever an undivided one-eighth part of and interest in and to all the oil, gas, and other minerals in, under, and upon the following described lands," etc. Appellee's deed also granted to him the right to collect and receive "an undivided one-eighth

part and interest due us or that may become due us as royalties under the aforesaid lease on oil and gas, or oil, gas or other minerals produced thereunder under the terms and conditions hereof." And the *habendum* clause has this language: "To have and to hold said undivided part and interest in and to said oil, gas, and other minerals, and such undivided part of all said royalties becoming due under and accruing from the aforesaid lease." But, while conceding that the appellee, under his mineral deed, acquired an interest in the land itself which would entitle him to the right of redemption of such interest as he acquired in the land, counsel for appellants nevertheless contend that the appellee acquired only a one-sixty-fourth interest therein. We cannot concur in this contention of counsel. The language of the granting and *habendum* clauses above set forth are unequivocal. They show that the appellee was granted "an undivided one-eighth part of an interest in and to all the oil, gas and other minerals in, under, and upon the lands" described. There is a stipulation in the record which indicates that the recorder, in transcribing the original deed upon the record, copied same, making the granting clause to read "an undivided one-eighth part of and interest in and to royalty all the oil, gas, and other minerals," etc., thus inserting the word "royalty" as if it appeared in the original deed filed for record in his office, when, in fact, the word "royalty" was not contained in the granting clause of the original deed. Under our registration statute, the parties are affected with notice of the original instruments as they are filed for record in the office of the recorder of the proper county. Section 1536, C. & M. Digest. The interest of the appellee Griffin granted by the original deed is the interest of which all parties must take notice under the registration act, *supra,* from the time the deed was filed; and the erroneous copying thereof by the recorder could not affect his rights. *Oates* v. *Walls,* 28 Ark. 244; *Turman* v. *Bell,* 54 Ark. 273, 15 S. W. 886,

26 Am. St. Rep. 35; *Ward* v. *Stark,* 91 Ark. 263, 121 S. W. 382.

We are convinced therefore that the appellee, under his mineral deed, acquired an undivided one-eighth part of and interest in and to all the oil, gas and other minerals in the eighty acres, and not simply an undivided one-sixty-fourth interest in the land, as appellants contend. True, the mineral deed of Alderson and wife to the appellee, conveying to him an undivided one-eighth of the minerals in the land, recites that it is subject to a certain mineral lease executed by the grantors to Rowland on September 5, 1919. But the appellants concede by their pleadings that the appellee, under the provisions of his deed and the lease, would have at least an undivided one-sixty-fourth interest in the gas, oil, and other minerals in the eighty acres of land. Appellants do not contend, as we have already said, that the appellee, under his deed, did not acquire any interest in the land at all; they do not contend that appellee acquired only an undivided interest in the rentals or royalties after severance of the oil, gas, or other minerals from the land. As to the interest acquired by the lessee in a lease for the development of oil and gas, see *Osborn* v. *Arkansas Ter. Oil & Gas Co.,* 103 Ark. 175, at page 180, 146 S. W. 122.

In this connection we observe that the testimony of Alderson and wife and of Griffin was to the effect that Griffin purchased from them, and they intended to convey to him, an undivided one-eighth part or interest in the gas, oil, or other minerals in the land. In other words, the testimony *aliunde* is in conformity with the deed itself.

5. The last question is, did the appellee's undivided one-eighth interest in the land give him the right to redeem from the foreclosure sale the entire property sold and purchased by the appellant Rowland? "The decree foreclosing a mortgage is not void for failure to make a subsequent purchaser from the mortgagor a party, as

his only right in the property was an equity of redemption, which is not cut off." *Livingston* v. *N. E. Mort. Security Co.*, 77 Ark. 379, 91 S. W. 752. Appellee contends that his undivided one-eighth interest in the land gives him the right to redeem the entire eighty acres from the foreclosure sale. To sustain his contention, the appellee relies upon the case of *Norris* v. *Scroggin,* 175 Ark. 50, 297 S. W. 1022. In that case there was a foreclosure under the power contained in a deed of trust, and the beneficiary or mortgagee purchased at the foreclosure sale, and entered into the possession of the land under his purchase. The widow and heirs of the maker of the deed of trust instituted an action to set aside the trustee's deed to the mortgagee. Some of the heirs were adults and others were minors at the time of the trustee's sale, and also one of them was a minor at the time of the institution of the action. The plaintiff alleged that the trustee's deed to the mortgagee, and the purchaser at the trustee's sale under the power, was void, for various reasons which they set up in their complaint. The minor plaintiffs asked to be allowed to redeem the property for themselves and their cotenants. The defendant, the purchaser at the trustee's sale, denied all the allegations of the complaint, set up title under trustee's deed, and pleaded title by limitation, and also pleaded laches and estoppel against the plaintiffs. We held in that case that the trustee's deed was void, and that the purchaser acquired no title thereby, because the trustee did not pursue the power contained in the deed of trust, and that the mortgage relation still continued between the mortgagee, purchaser at the void sale by the trustee, and the owners of the equity of redemption; that, although the widow and adult heirs of the maker of the deed of trust may have estopped themselves by their conduct from maintaining the action, this did not affect the right of the plaintiffs, who were minors, to maintain the action to set aside the trustee's deed and to allow them to redeem the property for themselves and their co-

tenants and to hold the defendant to an accounting as a mortgagee in possession.

An examination of the issues and the facts developed by the testimony in that case discloses that it has no application whatever to the question now to be decided. Such an issue was not raised nor considered. The foreclosure in that case was wholly void, while in the case at bar there was a valid foreclosure, which cut off the right of the equity of redemption of the makers of the deed of trust after the statutory period for redemption had expired. In the case of *Norris* v. *Scroggin, supra,* the purchaser at the foreclosure sale by the trustee acquired no title whatever, while, in the court foreclosure in the present case, the purchaser at the commissioner's sale, after the statutory period for redemption expired, acquired an indefeasible title to all the interest that the makers of the deed of trust had in the land, namely, an undivided seven-eighths interest therein. But the title acquired by the commissioner's deed under the foreclosure did not give the appellant Rowland an indefeasible title to the undivided part of the minerals in the land owned by the appellee, for, as we have seen, he was not affected by the foreclosure.

Appellants contend that appellee's undivided interest (which they assert was one-sixty-fourth) gave the appellee the right to redeem only to the extent of such interest, and not the entire eighty acres. To sustain their contention they rely upon the case of *Railway Company* v. *James,* 54 Ark. 81, 15 S. W. 15, in which the facts are substantially as follows: James sold to one Neel a block of land containing four separate lots, and reserved a vendor's lien for the unpaid purchase money on all four lots. The vendee, Neel, before paying the purchase money, sold the railway company a strip or parcel of land forty feet wide off the north side of lots 1 and 2. James died, and his administrator instituted an action to foreclose the vendor's lien upon the lots on which he had reserved the lien, including that which Neel had conveyed to the rail-

way company. The railway company was not made a party to the foreclosure suit. Sale was had under the foreclosure, and the administrator of James was the purchaser. There still being a balance due, the administrator instituted an action against the railway company to foreclose the vendor's lien upon the forty feet which it had purchased of Neel. The railway company answered this suit, and filed a cross-complaint, in which it alleged that it had not been made a party to the suit to foreclose the vendor's lien, and asked that it be allowed to redeem all of the lots upon which the vendor's lien had been reserved by paying the entire lien debt. The court denied the prayer of the cross-bill, and entered a decree in favor of the administrator for the balance due the estate of James, and directed that the land upon which the vendor's lien had been reserved be sold. In affirming the decree of the lower court, Chief Justice COCKRILL, speaking for the court, among other things said:

"It is argued that the railway company, which was the owner of the equity of redemption in a separate parcel of the premises upon which James' vendor's lien existed, had the right, prior to the sale under James' decree of foreclosure, to redeem the entire premises by paying the entire lien debt; and that the decree has not cut off that right, inasmuch as the company was not a party to the suit to foreclose. The rights of the parties, so far as those questions are concerned, are exactly analogous to those of a mortgagee and a subsequent vendee of the mortgagor of a part of the incumbered premises. A consideration of the equitable rules which govern those relations makes it clear that such a purchaser has not the unconditional right to redeem the whole mortgaged premises.

"The rule in such cases is sometimes stated to be that a part owner, or owner of a parcel, of the mortgaged premises may redeem the whole by paying the entire mortgage debt. But that is a generalization, and not an accurate statement of the rights of the respective par-

ties. The reason of the rule rests solely upon the mortgagee's right to hold his security intact and to receive his debt entire. The purchaser of a part of the premises from the mortgagor acquires no inherent right to be subrogated to the mortgagee's advantageous hold upon the other parts. He succeeds only to the mortgagor's rights in the parcel purchased. * * * He has no other rights as against the mortgagee. If the latter is willing to apportion his security and receive the due proportion of his debt for the release of the alienated parcel, the vendee thereof can demand no more; if the mortgagee is unwilling to do that, he will be compelled to submit to equitable terms, which, by the established rule, are that he shall be made whole by the payment of the entire mortgage debt. * * * The doctrine deducible from the principles which govern the rights of the parties in cases like this may be stated as follows: A purchaser of the equity of redemption of a part of the mortgaged premises may force a redemption of the entire premises, and be subrogated to the rights of the mortgagee, only when the latter has failed to resort first to the other parts of the premises for the satisfaction of the mortgage debt, and neglects or refuses to apportion his debt and security upon equitable principles so as to permit the release of the alienated parcel.

"In the case in hand the mortgagee has resorted by equitable foreclosure to the premises not conveyed by the mortgagor before proceeding against the parcel conveyed by him to the railway. The railway's right to redeem its parcel remains untouched. It has no right, as we have seen, to redeem the other parts."

Learned counsel for the appellee contends that the case of *Railway Co.* v. *James,* 54 Ark. 81, 15 S. W. 15, has no application, for the reason that in that case it was sought to redeem the entire property foreclosed under the vendor's lien by a subsequent purchaser of a separate piece of the property covered by such lien. It will be observed that neither of the cases cited by counsel to sustain

their respective contentions is precisely in point, because of the difference of the facts in those cases from the facts of the case at bar. It occurs to us, however, that the doctrine announced in the James case is equally applicable to the facts of this record. The fact, in the James case, that the party seeking to redeem was the owner of a separate parcel or tract covered by the vendor's lien, while in the case at bar the party seeking to redeem was the owner of an undivided portion of the land covered by the mortgage, is not such an essential difference in the facts of that case from the instant case as to call for the application of a different rule than that announced in *Railway Company* v. *James, supra.*

There was no request or demand on the part of the appellee to have the appellants apportion their security and to receive the due proportion of their debt for the release of appellee's undivided one-eighth interest, and no indication that the appellants would have been unwilling to apportion their debt had such proposal been made. The appellee was seeking, by the payment of the appellant's debt, to acquire title to the entire eighty-acre tract. This the appellee could not do, in the absence of a refusal on the part of the appellants to apportion their debt.

In *Shearer* v. *Field,* 6 Misc. Rep. 189, 195, 27 N. Y. Sup. 29, at page 33, it is said:

"But the rule which requires the owner of the equity of redemption of a part of the mortgaged premises to pay the whole amount of the mortgage and redeem the entire premises is one which was established for the benefit of the mortgagee, and it will not be enforced where the equities of the mortgagee are such that injustice will be done to him if he be compelled to convey the whole premises upon the receipt only of the mortgage debt." *Boquet* v. *Coburn,* 27 Barb. 230-33.

In 2 Jones on Mortgages, § 1375 (1074), it is said: "And so redemption may be made of a part where the mortgage has been foreclosed without making all of the several owners of the land parties to the suit, and the

mortgagee has purchased at the sale, because he has by such proceeding and purchase voluntarily severed his right, and obtained an indefeasible title to part of the land and only a defeasible title to another part. The owner not made a party may redeem the portion owned by him on paying a part of the mortgage debt bearing such a proportion to the whole as the value of his land bears to that of the whole mortgaged premises. * * * In some cases the general rule in regard to redeeming the entire interest is so far adhered to that the mortgagee is allowed to elect whether the part owner seeking to redeem shall pay the entire amount due under the mortgage, and so redeem all the property sold, or shall pay a proportional part of that amount and redeem merely the piece of which he was the owner." *Robinson* v. *Fife,* 3 Ohio St. 551.

As we have already stated, the decree of the trial court was bottomed upon the theory that the lease of Alderson and wife to Rowland was merged in the deed of trust also executed by Alderson and wife to Rowland. The court erred in thus departing from the issues made by the pleadings and proof in the case, and for this error the decree will be reversed, with directions to permit the parties, if they so elect, to plead further and to take further proof, and to allow the appellee Griffin to redeem under the rules of law above announced, and for such other and further proceedings as may be necessary and not inconsistent with this opinion.