JONES *v.* THE NATIONAL BANK OF COMMERCE OF EL DORADO.

4-7402                                   182 S. W. 2d 377

Opinion delivered July 3, 1944.

*G. E. Snuggs,* for appellant.

*C. B. Crumpler* and *Neill C. Marsh,* for appellee.

ROBINS, J. Appellant, D. L. Jones, by this appeal, seeks to reverse a decree of the lower court dismissing for want of equity his complaint against appellees, The National Bank of Commerce of El Dorado, Arkansas, Oliver Graydon Harris and W. H. Hines.

In his complaint appellant prayed for cancellation of foreclosure decrees of the Union chancery court rendered against appellant and others in favor of appellee, The National Bank of Commerce of El Dorado, the cancellation of deed executed by commissioner in pursuance of said decrees by which certain lands mortgaged by appellant to said bank were conveyed to the bank, and the cancellation of deeds executed by the bank to appellees, Harris and Hines, for these lands; and appellant also

prayed for the return of certain personal property owned by appellant and sold under the foreclosure proceeding, and for judgment against the appellee bank for $5,064.38.

On November 4, 1933, appellee bank filed suit against appellant and others in the First Division of the Union chancery court to recover judgment against appellant for debt and to foreclose certain mortgages executed by appellant to the bank.

On June 4, 1934, the chancery court rendered decree by which it was adjudged that said appellee recover of appellant the sum of $706.45 with interest at the rate of ten per cent. per annum from date of decree for the balance due on a certain promissory note, which amount was declared a first lien by virtue of a real estate mortgage on one hundred and twenty acres, and by which it was also adjudged that appellee bank recover of appellant the further sum of $1,054.37 with interest at the rate of ten per cent. per annum on another promissory note, which amount was declared a lien on said lands and also on certain personal property, by reason of another mortgage given by appellant thereon. The decree ordered foreclosure of the mortgages and sale of the land and personal property. On September 3, 1934, another decree, making the foreclosure effective as to certain other parties, and fixing the sale on November 3, 1934, was rendered.

The property was sold by the commissioner on November 3, 1934, the sale was reported to the court by the commissioner on November 5, 1934, and on September 3, 1935, the commissioner's report of sale and deed conveying the property to appellee bank were presented to the court and approved. In the early part of 1936, appellant surrendered all the property to appellee bank and moved to Louisiana. Appellee bank, on January 14, 1937, sold and conveyed to appellee Harris forty acres of the one hundred twenty-acre tract obtained by it in the foreclosure proceeding, and appellee Harris thereafter spent a considerable amount in improving the land bought by him. Subsequently appellee bank sold

and conveyed the remaining eighty acres to appellee, W. H. Hines.

On October 26, 1934, after the foreclosure decrees had been rendered, appellant filed in the United States District Court a petition asking for the benefit of the provisions of § 75 of the Bankruptcy Law, 11 U.S.C.A., § 203, commonly known as the Frazier-Lemke Act, and on November 3, 1934, this petition was referred to the Conciliation Commissioner. On June 25, 1935, the Conciliation Commissioner filed his report in the United States District Court, and on July 1, 1935, that court entered an order dismissing appellant's Farmer-Debtor petition. For some reason not disclosed by the record appellee bank, on July 17, 1935, filed in the federal court a motion asking for dismissal of appellant's Farmer-Debtor petition which had already been dismissed, and on November 1, 1935, this motion was granted by the court, and the case was again dismissed.

On November 1, 1941, a second "Farmer-Debtor Petition" was filed in the United States District Court for the Western District of Arkansas. In his schedule to this petition appellant set forth that his sole indebtedness was to appellee bank in the sum of $2,435.62, and that his assets included the land which had been taken from him in the foreclosure proceeding, valued at $4,000, an unliquidated claim against appellee bank for rents and proceeds of oil amounting to an aggregate of $7,500 and the foreclosed personal property and ungathered crops of the value of $1,240. In other words, appellant in this petition asking for the benefit of the Bankruptcy Act alleged that he owed $2,435.62 and owned property of the total value of $12,750. This second "Farmer-Debtor" petition filed by appellant was not a renewal or an attempt to reinstate his former petition. On the contrary, appellant himself asserted, in a response filed by him to a motion to dismiss his petition, that the subject-matter of the second petition was not the same as that of the first. The substance of appellee's motion to dismiss was a plea of former adjudication and an averment that petitioner did not show grounds for relief.

Appellant's second petition was referred to the Conciliation Commissioner who, on March 2, 1942, filed with the United States District Court his report in which he recited that appellant alleged in his petition that appellee bank was indebted to appellant in an amount in excess of $7,500, and that appellant owed only the sum of $2,435.62, from all of which the Commissioner concluded as a matter of law, and so reported to the court, that appellant's petition did not show that he was insolvent within the meaning of § 75 of the Bankruptcy Act, and therefore his petition did not state facts entitling appellant to relief in the Bankruptcy Court.

On March 30, 1942, this report was heard by the district court and an order was entered by it approving the report and dismissing appellant's petition for relief under the Bankruptcy Law. Appellant prayed, but did not perfect, an appeal from this order.

In his complaint in the instant case, which was filed on September 12, 1942, in the Second Division of the Union chancery court, appellant stated that he "bases this action and his right of immediate possession of all of the properties . . . his right of recovery of money judgment against National Bank of Commerce in the sum of $5,064.38, and the relief prayed, on the findings and judgment of the District Court of the United States for the Western District of Arkansas, . . . entered on March 30, 1942."

In other words, the basis of appellant's claim in the proceeding at bar was the order of the district court dismissing his second petition in bankruptcy. Plainly stated, appellant's contention in the court below was that, because he alleged in his bankruptcy petition that appellees were wrongfully withholding his property and that appellee bank owed him $5,064.38 in excess of his debt to the bank, and because the district court dismissed his petition for the reason that it failed to show insolvency of appellant, or his inability to pay his debts as they matured, this amounted to a judicial ascertainment and declaration that the allegations of his petition were true, that appellees, Harris and Hines, were wrong-

fully in possession of his property, and that appellee bank owed appellant $5,064.38.

Appellant misconstrued the meaning and effect of the district court's order. The order simply meant that appellant's petition, if true, failed to show that he was an insolvent debtor, or was unable to pay his debts as they matured, so as to be entitled to the benefits of the Bankruptcy Act.

In support of his contention appellant argues that appellee bank's motions to dismiss appellant's Farmer-Debtor petitions amounted to admissions by appellee bank of the truth of the allegations of said petitions. These motions contained averments that appellant's petitions did not contain allegations necessary to entitle appellant to the relief sought by him, and in reality amounted to demurrers to the Farmer-Debtor petitions. While it is said that, for the purpose of testing the legal sufficiency of a pleading, a demurrer admits the allegations of the pleading, it has never been held that by filing a demurrer to a pleading a party is thereby precluded from ever disputing the allegations of the pleading to which the demurrer was filed. "The admissions by demurrer are only for the purpose of passing upon the sufficiency in law of the pleading demurred to, and they are not evidence, nor an absolute admission dispensing with proof upon the trial on the merits." 49 C. J. 442.

The district court did not find or declare that appellant owned the property described in the petition or that appellee bank owed him the amount claimed by appellant or any other sum. The effect of the district court's order was merely a declaration that, assuming the truth of appellant's petition, appellant's financial condition was such that the bankruptcy court could not afford him any relief.

Furthermore, the district court had no jurisdiction to try and determine the disputed question of the existence and amount of any alleged indebtedness of appellee bank to appellant or the title of the property

claimed by appellant and held adversely by appellees. All the parties being residents of Arkansas the jurisdiction to litigate any of those matters was solely in the state courts. "The general rule is that a trustee in bankruptcy, wishing to sue on behalf of the estate, must resort to the same courts to which those whose rights he represents might have resorted if bankruptcy had not intervened." 8 C. J. S. 1134, § 348.

While appellant in his complaint set forth that he based his action "on the findings and judgment of the District Court of the United States for the Western District of Arkansas . . . entered on March 30, 1942," and did not anywhere in his complaint filed in the lower court attack the validity of the foreclosure proceedings on the ground that these proceedings were void because the filing of his first Farmer-Debtor petition in the district court deprived the state court of jurisdiction to proceed further in the foreclosure suit, the pendency of this petition does appear from the exhibits to appellant's complaint in the case at bar, and, under our rule that in equity the averments of the complaint are controlled by the exhibits, it might be said that the complaint was sufficient to raise this question. We conclude, however, that a contention that the order of the chancery court confirming the foreclosure sale was void because of the pendency of the bankruptcy proceeding could not be sustained by the record in this case.

Appellant's Farmer-Debtor petition in the first proceeding (No. 247-B) was dismissed by the district court on July 1, 1935. That appellee bank, on July 17, 1935, filed a motion to dismiss, and the court made another order of dismissal on November 1, 1935, does not alter the fact that the proceeding was actually dismissed on July 1, 1935. The mere filing of an unnecessary motion by appellee bank and the making of an unnecessary order by the court would not serve to reinstate or to revive in any manner the proceeding which had been dismissed.

Therefore, when the chancery court met on September 3, 1935, this situation existed: The property of ap-

pellant had been sold under a decree rendered before the filing of the Farmer-Debtor petition. No question as to the validity of this decree is or could properly be raised. While the sale was made after the filing of the bankruptcy petition, yet, before the report of sale came up for the approval of the court, the bankruptcy proceeding had been dismissed.

Conceding that, under the rule laid down by the Supreme Court of the United States in the case of *Kalb* v. *Feuerstein,* 308 U. S. 433, 60 S. Ct. 343, 84 L. Ed. 370, the filing of the bankruptcy petition automatically suspended the power of the state court to proceed further, the dismissal of the bankruptcy proceeding restored this power, so that the chancery court was authorized to act on the Commissioner's report. In the case of *Union Joint Stock Land Bank of Detroit* v. *Carl Byerly,* 60 S. Ct. 773, 84 L. Ed. 1041, 310 U. S. 1, it was said: "Although the state court's jurisdiction was superseded by that of the bankruptcy court, it again attached upon the dismissal of the bankruptcy case, and, thenceforward, as respects the foreclosure suit, and the state court's procedure, it was as if no bankruptcy case had ever existed."

The objection that the sale was made at a time when under the Bankruptcy Law it should have been stayed was one which the chancery court had plenary jurisdiction to hear and determine. The chancery court's order approving the sale cured any irregularity affecting the sale and was a final adjudication of the matter, and, not having been appealed from, is a bar to appellant's instant suit. *Neff* v. *Elder,* 84 Ark. 277, 105 S. W. 260; *Bank of Pine Bluff* v. *Levi,* 90 Ark. 166, 118 S. W. 250; *Green* v. *Maddox,* 97 Ark. 397, 134 S. W. 931; *Glasscock* v. *Glasscock,* 98 Ark. 151, 135 S. W. 835; *Cassady* v. *Norris,* 118 Ark. 449, 177 S. W. 10; 31 Am. Jur. 470.

Furthermore, even if it had been shown that the order confirming the foreclosure sale was void, under the facts in this case it must be held that appellant was estopped by his conduct and his inaction to question the validity of this sale.

Appellant was a party to the foreclosure suit. **He** had been served with summons therein. It was his **duty** to keep himself advised of the proceedings in this suit against him. *Trumbull* v. *Harris,* 114 Ark. 493, 170 S. W. 222. It must be presumed that he was fully aware of the progress in the case. Yet, after the decree was rendered against him, he stood by and permitted the sale to be made, and report of sale to be confirmed, without at any time calling his bankruptcy petition to the attention of the chancery court, or asking the bankruptcy court to stay the foreclosure proceedings. And, when directed by the sheriff in February, 1936, to turn over the property to the purchaser at the foreclosure sale he complied, without in any manner questioning the validity of the Commissioner's deed to appellee bank. He moved away from the state and did no act indicating a disposition or intention to challenge the validity of the foreclosure until more than five years after the sale. After he abandoned the land it was sold by appellee bank to appellees, Harris and Hines, who bought and improved the land in the belief that they were acquiring good title thereto. By his failure to act when he should have acted and by his tacit recognition of the validity of the Commissioner's sale to appellee bank appellant is estopped now to question it. In 31 C. J. S. 368, § 115, it is said: "A person who, with knowledge of the facts and of his rights, assents to, . . . judicial proceedings without objection is ordinarily bound by such proceedings as against one who has been misled to his injury." The same rule is announced in these cases: *First National Bank* v. *Farmers' & Merchants' Bank,* 159 Ark. 384, 252 S. W. 34; *Adams* v. *Woods,* 128 Ark. 441, 194 S. W. 849; *Walker* v. *L. Maxcy, Inc.,* 103 F. 2d 24.

The doctrine of laches also would bar appellant's claim, if it were otherwise enforceable. *Railway Company* v. *James,* 54 Ark. 81, 15 S. W. 15; *Ayers* v. *McRae,* 71 Ark. 209, 72 S. W. 52. In the case of *Jackson* v. *Becktold Printing & Book Manufacturing Company,* 86 Ark. 591, 112 S. W. 161, 20 L. R. A., N. S., 454, it was sought by appellants to set aside in a collateral proceeding a foreclosure sale made in pursuance to a decree which was ad-

622

mittedly void because (at a time prior to the statute authorizing such a decree) it was rendered in vacation. The suit attacking the sale was filed almost five years after the property was sold. It appeared that the owners of the property, who were defendants in the original proceeding and plaintiffs in the latter proceeding, knew about the sale and made no objection at the time, and it also appeared that the purchaser at the foreclosure sale sold parcels of the land to different parties. This court held that the appellants were barred by laches, saying: "These facts render appellants guilty of laches in not sooner moving to annul the foreclosure decree, and make it inequitable to divest the numerous purchasers of rights which they acquired under what purported on its face to be a valid decree, and which they were led to believe appellants had acquiesced in by their delay and negligence in moving to have it annulled and set aside."

We conclude that the decree of the lower court is correct, and it is affirmed.