BELOATE, EXECUTOR *v.* SMITH.

4-8733                                          218 S. W. 2d 361

Opinion delivered February 21, 1949.

Rehearing denied April 4, 1949.

*Ponder & Ponder* and *W. P. Smith,* for appellant.

*Bryan J. McCallen, J. L. Taylor* and *E. G. Ward,* for appellee.

Ed. F. McFaddin, J.   This is the second appearance of this case in this court.   (See 212 Ark. 39, 204 S. W. 2d 908).   The property which is the object of this controversy is Lot 13, Block 11 in Corning, Arkansas; and the question now to be decided is whether the appellee was a *bona fied* purchaser of the legal title for value without notice of any equitable claim on the part of appellant or his testate.

## FACTS

We relate the basic facts in chronological order in the following numbered paragraphs:

1.   H. C. Kellett of West Plains, Missouri, is the admitted common source of title.   On June 19, 1931, Kellett contracted to sell the property to S. R. Beloate of Corning, Arkansas, for $1,000, the amount to be paid in five installments each of $200 and interest, beginning June 19, 1932, and continuing annually thereafter until paid in full.   Beloate executed five notes, and Kellett and wife executed a warranty deed to Beloate and placed it in escrow in a bank with a contract which read in part:

"If the said notes and each of them be promptly paid at maturity and if the second party shall pay promptly all taxes and assessments against said property as they become due and payable (except that each of the parties hereto shall pay half of the taxes due and payable in 1931), then the said First National Bank upon full and complete payment of all of said notes at the time of their maturity, shall deliver over to the second party the deed and abstract to the above property. But it is specifically agreed by the parties hereto that if the said notes or any of them be not promptly paid at maturity, (or) shall the taxes and assessments be not paid

when due, then the said First National Bank is authorized to deliver the deed and abstract back to the first party upon his election to call for same, and the second party agrees to deliver back possession of said property without demand or notice, it being agreed that until the said notes are paid, that the first party retains title to said premises.''

2. Shortly before the first note became due in 1932, Beloate and Kellett made this endorsement on the contract:

''In consideration of S. R. Beloate taking the property described in contract to which this is attached and made a part thereof, subject to all the taxes, assessments, penalties and costs and releasing me upon my warranty as to said charges in deed referred to in hereto attached contract, I hereby agree to cancel and deliver to him his notes of even date with said contract due June 19, 1932, and June 19, 1933, of $200.00 each, and endorse a credit of $40.00 upon his note of $200.00 due June 19, 1934; leaving a balance due under said contract as the remaining notes mature of the sum of $560.00, upon the payment of which, deed and abstract are to be delivered to him. This June 3, 1932.''

3. In June, 1934, S. R. Beloate paid the note due that month, but never paid the notes due in June, 1935, and June, 1936. Rather, on May 18, 1935, Beloate wrote Kellett a letter reading: ''On June 19th, next, I am to pay you my 3rd note of $200. It is and will be impossible for me to meet and pay same on maturity, and I am asking you to extend the time on same for 1 year, upon paying on or before the 6-19-35 one year advance interest of $12. If you are not willing to extend same, please advise me immediately, that I may be able to make proper arrangement for moving.''

To this letter Kellett replied on May 20th: ''I have your letter of May 18th concerning $200 note due June 19th, and requesting an extension upon payment of $12 interest. Please let me know if you have taken care of the taxes, assessments, etc. If not, what they amount

to, etc. I will then advise you concerning the extension."

4. By subsequent correspondence Beloate advised that he owed $553.92 taxes and assessments on the lot, but hoped to borrow enough to pay this amount, and also to pay the note due on June 19, 1935, if Kellett would extend the said note to December 19, 1935. Kellett agreed to the six-month extension, and Beloate sent him $6.00, being interest at 6% on the $200 note from June 19th to December 19th, 1935. Then on January 4, 1936, Kellett wrote Beloate: "On June 15th you sent me money order for $6.00 to pay interest for six months on $200 note, stating that you would like to have it extended until December 19, 1935. I will appreciate it very much if you will send me funds to take up the $200 note, as per your letter."

5. To the foregoing letter Beloate replied under date of January 9, 1936: "I regret my necessity to advise you that I am unable to take up my note, past due; and can give no assurance as to date on which I may be. Would suggest that you come down immediately, unless you are willing to let the matter ride (as it stands) for the present. I am willing to cancel our contract IF—."

6. Receiving no reply, Beloate again wrote Kellett on May 16, 1936: "As I wrote you 1-9-36, I am unable to pay my note past due, and no assurance when, if ever, give. I will leave in a few days, possibly by the 24th inst., upon my usual vacation throughout Ark., repairing sewing machines, the same as when I first met you at Doniphan. I expect to return in the early fall, as I will not be out of Ark., while gone and I prefer to get this matter settled before I leave. If you decide to come, as I heretofore requested, you give me 28 hours notice and I will be in town, otherwise I may be out somewhere in the neighborhood working."

7. Kellett never answered the foregoing letter, and shortly thereafter exercised the power given him in the escrow contract (see paragraph numbered 1, *supra*); and demanded and received the said deed held in escrow by the bank. The contract between Beloate and Kellett was

never placed of record, so the record title all the time was in Kellett. The property became vacant, and in December, 1936, Kellett rented the property to a tenant.

8. On May 24, 1937, Kellett sold the property to Charles R. Black and J. L. Taylor, and executed a deed to them for a valuable consideration, and that deed was placed of record. Black and Taylor immediately entered into possession of the property, and paid some of the tax delinquencies which Beloate had mentioned in his letter (see paragraph 4, *supra*), but had never paid. Then on November 21, 1938, Black and Taylor by warranty deed conveyed the property to the appellee, Tizzie Smith, for a valuable consideration. The grantee had neither knowledge, nor notice of any claim of S. R. Beloate, nor information of any facts, which information— if pursued by a man of ordinary diligence—would have led to knowledge or notice of S. R. Beloate's claim to the said property. Tizzie Smith placed his deed of record, and entered into possession immediately upon receiving his deed from Black and Taylor, and paid all taxes and special assessment delinquencies (amounting to several hundred dollars), and made substantial improvements to the building on the property. He has remained in such possession at all times since receiving his said warranty deed in November, 1938.

9. S. R. Beloate was, as shown by his letter of May 16, 1936, an itinerant machine repair man. He left Arkansas on such a trip in 1936, and never returned—so far as the record here reflects. In November, 1941, it was learned that he had departed this life in North Carolina. His will was duly probated in Clay County, Arkansas, and W. E. Beloate (appellant here) is the executor of the will and the principal beneficiary.

10. In August, 1943, W. E. Beloate as executor and beneficiary filed this case as an action in ejectment against Tizzie Smith. The case was transferred to the Chancery Court, and C. R. Black and J. L. Taylor and H. C. Kellett were sought to be added as parties. Considerable testimony was taken by each side, and various incidental issues arose.

## DECISION

So much for the narration of basic facts. We come now to the issue. Appellee, Tizzie Smith, claims that when he purchased the legal deed from Black and Taylor in 1938, he was an innocent purchaser for value without notice of any outstanding equities, and is therefore entitled to prevail. Appellant Beloate claims that Kellett, by virtue of the contract with S. R. Beloate and subsequent possession, became a mortgagee in possession of the property; and that the subsequent purchasers—Black and Taylor and Smith—took with knowledge or notice that Kellett was a mortgagee in possession for S. R. Beloate. Appellant cites these cases on his contention: *Priddy and Chambers* v. *Smith,* 106 Ark. 79, 152 S. W. 1028, 44 L. R. A., N. S. 285; *Lesser* v. *Reeves,* 142 Ark. 320, 219 S. W. 15; and *Williams* v. *Baker,* 207 Ark. 731, 182 S. W. 2d 753.

In the Chancey Court, the burden was on Beloate as plaintiff to prove that Smith had notice of the infirmities of the deed he received from Black and Taylor, and of their deed from Kellett, since Smith paid a valuable consideration for the warranty deed he received from them. See *Bell* v. *South Arkansas Land Co.,* 129 Ark. 305, 196 S. W. 117; *Osceola Land Co.* v. *Chicago Mill & Lbr. Co.,* 84 Ark. 1, 103 S. W. 609; *White* v. *Moffett,* 108 Ark. 490, 158 S. W. 505.

The Chancery Court on March 1, 1948, found and decreed: ". . . that plaintiffs' alleged claim to said property based on an alleged deed from H. C. Kellett, former owner, and based upon seven years' adverse possession is not sustained by the evidence; that all the allegations of defendant's cross-complaint, including his allegation of being a *bona fide* purchaser for value without notice under his warranty deed from J. L. Taylor and C. R. Black, dated November 21, 1938, are fully sustained by the proof; that the title to said lot should be forever quieted and confirmed in defendant, his heirs and assigns."

We reach the conclusion that the Chancellor's finding and decree were correct. The legal title was in Kel-

lett. He conveyed to Black and Taylor, and they conveyed to Tizzie Smith. There was nothing of record to charge Tizzie Smith with notice of any claim of S. R. Beloate, and Smith had neither knowledge nor notice of any such claim. One becomes the owner of property who, for a valuable consideration and without knowledge or notice of secret equities, purchases real estate in good faith from the holder of the legal title in possession. *St. L. & Ark. Lbr. Co.* v. *Godwin,* 85 Ark. 372, 108 S. W. 516; *Woodrow* v. *Riverside Greyhound Club,* 192 Ark. 770, 94 S. W. 2d 701; *Bell* v. *So. Ark. Land Co.,* 129 Ark. 305, 196 S. W. 117. See, also, West's Arkansas Digest, "Vendor and Purchaser," § 239. See, also, 55 Am. Juris. 1042, *et seq.*

As previously mentioned, several collateral questions arose in the course of the litigation (such as adding parties, refusing to allow pleadings to be filed after time amending the record and other similar matters, all of which we find it unnecessary to discuss, because the decision heretofore made disposes of the case. The trial court exercised its discretion in all of these matters; and we cannot say that there is any showing of abuse of such discretion. *Austin* v. *Dermott Canning Co.,* 182 Ark. 1128, 34 S. W. 2d 773.

Affirmed.