JOSIE RAILEY MAYS v. EULE MILLER & GENEVA MILLER

5-4642                                            431 S.W. 2d 750

Opinion delivered September 23, 1968

*Paul K. Roberts* for appellant.

*Tom Haley* for appellees.

JOHN A. FOGLEMAN, Justice.    This appeal involves the question whether the finding of the trial judge that appellees were innocent purchasers for value of certain real property is against the preponderance of the evidence.

Appellant, Josie Railey Mays, was the owner of Lots 6 and 7 in Block 8 of Lincoln Park Addition to Warren on March 6, 1958 when she executed a warranty deed conveying it to Dr. H. H. Rhinehart.    Appellant had previously applied for and obtained from Dr. Rhinehart an amount of money sufficient to retire an indebtedness secured by deed of trust conveying this property.    The chancellor's finding that, as between the parties, this deed was a mortgage is amply supported by the evidence.

Dr. Rhinehart filed his deed for record April 8, 1958.    On September 12, 1959, he conveyed the lots to appellees by warranty deed recorded on the same date. Rhinehart died in 1960.    This suit was brought on August 17, 1966 by appellant to cancel appellees' deed,

and the deed that she executed to Dr. Rhinehart. After hearing all the evidence, the chancellor found that appellees were innocent purchasers for value who had no notice, actual or constructive, that appellant was claiming an interest in the land. He dismissed the action.

In February 1959, after execution of the deed to Dr. Rhinehart, appellant was called to Arizona because of the illness of members of her family and remained there until 1965, except for two visits to Warren in 1960. Her husband remained in her home on the property in question, but he subsequently surrendered it to Dr. Rhinehart. Appellant was advised of this development by her sister in Warren. Upon her first return visit she asked Dr. Rhinehart why he sold her property and furniture, but he gave no reply.

Eule Miller testified: He first found out about the property when he saw a ''For Sale'' sign on the porch of the house one Sunday while he and his wife were out driving. He then talked to his employer, George Smith, who made arrangements for him to borrow money to purchase it. He testified that he paid $1,300 for the place and spent $300 on the bathroom and $50 on the roof. When he moved in about two weeks after borrowing the money[1], there was furniture nailed up in a room, but Dr. Rhinehart asked to let it remain there for a few days. About two weeks later someone he did not know came and got the furniture. He did not know to whom the furniture belonged. He cannot read, but his wife read the ''For Sale'' sign. Dr. Rhinehart said that he owned the property and Mr. Smith had the title checked. He did not know appellant or know that anyone else claimed the lots until this suit was filed. No one had objected to his living in the house.

Miller's wife corroborated his testimony. She denied knowing appellant or having any knowledge that appellant claimed the property before the suit was filed.

---

[1] The note evidencing the loan was dated September 16, 1959.

Tax receipts exhibited show that appellees paid the taxes on the lots in the years 1958 through 1964.

Appellant relies on three propositions developed in the testimony to sustain her contention that appellees were not innocent purchasers without notice. They are:

1. Although Eule Miller testified that he saw the "For Sale" sign on the house and told his wife that it was for sale, he admitted on cross-examination that he could not read and that his wife read the sign.

2. There is no showing that appellees examined the record title.

3. The furniture appellees found in one room of the house should have put them on notice of an adverse claim.

None of these facts, singly or in combination, would have been sufficient to show either actual or constructive notice to appellees of appellant's claim. The slight discrepancy in Eule Miller's testimony was explained by him. This had to do with a matter that was not significantly material to any issue. While it might have had some bearing on his credibility or the weight to be given his testimony, it certainly did not constitute evidence of notice. Obviously, the chancellor, who saw and heard the witness, did not feel that Miller's credibility was destroyed, and we cannot say that he was in error.

While the failure to make any examination of title might constitute a circumstance to be considered in determining a purchaser's good faith, Miller's statement that his employer caused the title to be examined is undisputed. The fact that a bank made a loan secured by this property tends to corroborate this testimony. An examination of the title would not have indicated that

Rhinehart's recorded deed was in fact a mortgage. There is no reason to say that the Millers' explanation that they thought the fourniture belonged to Dr. Rhinehart is not plausible and reasonable, or that the mere presence of the furniture and its subsequent removal at a time consistent with Rhinehart's suggestion, by a person unknown to them, was sufficient to have provoked any inquiry by appellees. Apparently Dr. Rhinehart's actions were consistent with his ownership of these items because appellant found her bedspread on his bed and asked him why he sold her furniture.

Appellant argues that Dr. Rhinehart could convey no title to appellees because he had none to convey. It is well settled that one who purchases property in good faith and pays a valuable consideration without notice of secret equities becomes the owner thereof. *Beloate* v. *Smith,* 214 Ark. 884, 218 S.W. 2d 361.

One who conveys land to another upon a fraudulent representation by the latter may not have relief against a subsequent purchaser for value without notice of the fraud. *Davidson* v. *Davidson,* 42 Ark. 362.

The findings of the trial judge are supported by a clear preponderance of the evidence. Consequently, there was no reason for him to consider defenses of laches, estoppel or the statute of limitations.

The decree is affirmed.